**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

September 20, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 04-20252**

**BRUCE LEE KITTELSON,**

**Petitioner-Appellant,**

**versus**

**DOUG DRETKE, Director, Department**
**of Criminal Justice, Correctional Institutions Division**

**Respondent-Appellee.**

Appeal from the United States District Court
for the Southern District of Texas

Before KING, Chief Judge, DAVIS, Circuit Judge, and ROSENTHAL, District Judge.[*]

PER CURIAM:

Bruce Lee Kittelson appeals the district court's denial of his application for a writ of habeas corpus. This court granted a certificate of appealability (COA) as to three of the issues Kittelson raised. We now find that Kittelson has shown a basis for relief under 28 U.S.C. § 2254 because the state courts unreasonably applied clearly-established Supreme Court law governing the Sixth and Fourteenth Amendments. We reverse, render, and remand, for the reasons set out below.

---

[*] District Judge for the Southern District of Texas, sitting by designation.

## I. Factual and Procedural Background

A state jury found Kittelson guilty of indecency with a child by contact. Two enhancement paragraphs alleging prior felony convictions, one for possession of a controlled substance and one for aggravated assault, were found to be true. Kittelson received a twenty-five year prison sentence.

The trial was short. There was no physical evidence. The case hinged on the child's accusation, which was not made until one month after the alleged event. Kittelson, a 37 year-old man, lived with his girlfriend, Janet Stokes, and her two children, Jana, then age 9, and Darian, a toddler. Kittelson had lived with Stokes for approximately 15 months and frequently took care of her children. Stokes and her neighbor, Teresa Driver, often worked late night shifts and coordinated babysitting arrangements. Driver had an 8 year-old daughter, the complainant, referred to in the state court trial transcript as "T.D." On the night in question, February 8, 1997, Kittelson watched Jana, Darian, and T.D. while Stokes and Driver were at work. Kittelson had taken care of T.D. as well as Jana and Darian on several previous occasions, without incident.

At the trial, T.D., Jana, and Kittelson testified about the events of February 8, 1997. Their testimony was consistent except as to the alleged molestation. After Stokes and Driver left, Kittelson fed the children. The two girls gave themselves baths and watched television in the living room while Kittelson watched television in the bedroom. The girls then put themselves to bed in Jana's bedroom, sleeping together inside a toy tent. Darian slept in a crib in the same room. Kittelson moved to the living room and continued watching television.[1]

---

[1] Bruce Lee Kittelson v. The State of Texas, No. 749235, (Volume) 3 Trial Transcript ("Tr.") 26-28.

T.D. testified that at some point during the night, she woke up and could not go back to sleep. She went into the living room and asked Kittelson to scratch her back, then to rub her stomach. T.D. testified that as Kittelson rubbed her stomach, he kept moving his hand lower until he rubbed her genital area outside and inside her underwear, then placed her hand "on his ding dong, whatever," through his clothing. T.D. did not remember if Kittelson said anything to her. T.D. told Kittelson that she would like to go back to bed, left the living room, and crawled back into the tent with Jana. T.D. testified that she cried herself back to sleep.[2]

Kittelson testified on his own behalf. He denied touching T.D. Kittelson told the jury that neither Jana nor T.D. woke after they went to sleep in the tent. Jana also testified as a defense witness. She stated that she would have heard if T.D. had left the tent during the night, come back in, and cried. Jana did not see T.D. leave the tent and did not hear any noises. Jana also testified that T.D. did not appear frightened when she was around Kittelson.[3]

The following morning, Kittelson prepared breakfast for the children and took T.D. back to her mother's apartment. During the next month, Kittelson again took care of T.D., as well as Jana and Darian, without incident. Approximately one month later, on March 7, 1997, Jana and T.D. were at the apartment of another babysitter, Diane Parker, who had a ten-year-old daughter named Christine. As the three girls played together, they became loud. Parker, who was in a separate room, scolded the girls, telling them to be quiet or she would make them go to Jana's apartment. Christine told Jana and T.D. that she had been raped by her father. Both Jana and T.D. then told Christine that when Kittelson had taken care of

---

[2]   Id.

[3]   Id. at 43-46.

3

them in February, he had sexually touched them. Parker told Driver and Stokes what their daughters had said. Driver notified the Webster City Police Department, reporting that both girls had alleged that Kittelson molested them. That same day, Jana recanted her accusation.

Officer Jeff Tate talked to Driver, Parker, and Stokes and arranged for both T.D. and Jana to be interviewed by a counselor through the Children's Assessment Center. T.D. was interviewed on March 20, 1997. Jana was interviewed on March 21, 1997. During her interview, T.D. stated that she had been similarly touched on two prior occasions, once by a nine year-old relative and once by an unidentified stranger who had tried to get her to come into his car. During the interview, T.D. referred to the two previous incidents as "nothing really"; told the case worker that her mother had taught her the word "molested"; referred to the incident with Kittelson as a "stupid story"; used the words "tits" and "dick" casually; described Kittelson's penis as "soft and squishy"; and did not remember details about the incident with Kittelson. Jana stated in her interview that Kittelson did not abuse her.

After viewing the videotaped interviews, Officer Tate signed a probable cause affidavit for indecency with a child by contact. The affidavit identified Diane Parker as the outcry witness. Kittelson was indicted for "touching the genitals of [T.D., a child under the age of 17 and not the defendant's spouse] with the intent to arouse or gratify the sexual desire of the defendant," a violation of § 22.011(a) of the Texas Penal Code. A conviction under section § 22.011 "is supportable on the uncorroborated testimony of the victim of the sexual offense . . . if at the time of the alleged offense the victim was a person . . . 17 years of age or younger."[4]

---

[4] TEX. CODE CRIM. PROC. § 38.07. Texas law provides a hearsay exception for the testimony of an outcry witness, defined as the first adult person other than the defendant to whom the victim made a statement describing the incident in a discernible manner. The State must give notice of its intent to call such a witness and only one adult may testify about the child's out-of-court description of the alleged abuse. TEX. CODE CRIM. PROC. §38.072.

4

Kittelson was appointed counsel and entered a plea of not guilty. At the September 1997 trial, the State called three witnesses: T.D., Driver, and Officer Tate. The defense called Kittelson, Jana, Parker, and a clinical psychologist. The defense theory was that T.D. had been influenced to make up the story about Kittelson by the older girl's (Christine's) description of sexual abuse she had experienced and by the admonishment from the babysitter (Parker). After the jury was impaneled, the trial court granted two oral motions in limine made by the State. One limine order prohibited the defense from introducing evidence that Jana had joined T.D. in accusing Kittelson of improper touching, but recanted the accusation the same day. This motion was heard and decided off the record. The second limine order prohibited the defense from cross-examining T.D. or Driver about the two prior times T.D. had reported sexual abuse by different individuals. The trial court granted this motion on the record:

> The Court: Let the record reflect that the State approached the bench this morning with oral motions in limine concerning two instances that have been disclosed to the defense in which the complainant in this case told her mother or her stepmother about her brother or stepbrother touching her [and] another incident which was reported to the Texas City police of a stranger allegedly touching her on her genitals. [] And the court has asked the prosecutor to check with the complainant, and at the present time the prosecution is attempting to get a copy of a Texas City policy report. The court's inclination is to limine out that information unless there is some evidence that shows or – affects . . . the complainant's credibility – and my understanding is at this time there is not.[5]

The prosecutor described both of the prior incidents. When T.D. was five years old, she told her mother that her stepbrother – then nine – had touched her in the genital area through her

---

[5]    3 Tr. 3.

clothing.[6] The second incident "was apparently an attempt to lure her away from her father and stepmother's house [while] she was playing outside . . . . [The stranger] approached her and was attempting to get her to leave their home and he touched her inside of her clothing on her genitals, showed her a magazine and [a] Barbie doll. At that point the stepmother called to her and she went home and that was reported to the Texas City Police Department. But since it was a stranger, nothing has ever been done about it."[7] It is unclear when this second incident occurred and the police report is not in the record. The trial court granted the motion in limine and told defense counsel that "if the situation changes or you feel the door is opened, approach the bench."[8] Defense counsel objected to both limine orders.

At trial, the State called T.D. as its first witness. The defense was precluded from asking T.D. questions about her prior accusations of abuse. The State then called Officer Tate to testify about his investigation. Officer Tate stated that he had arranged for CPS to interview both T.D. and Jana:

> When I received this case from my supervisor, I spoke to the outcry witness, Diane Parker, and I obtained an affidavit of facts from her which was placed with the case file. I then spoke to [Driver and Stokes] and contacted the Harris County District Attorney's Office . . . and set up interviews with Child Protective Services for [T.D.] and Jana.[9]

Tate explained that after CPS completed the interviews, he collected the information and forwarded it to the district attorney's office, which obtained a warrant for Kittelson's arrest.[10]

---

[6] T.D. testified that she did not have any stepbrothers, but that she had an uncle who was eleven or twelve years old at the time of the trial. Id. at 38.

[7] Id. at 4.

[8] Id. at 5.

[9] Id. at 80.

[10] Officer Tate also testified that when he went to Kittelson's apartment to serve the warrant, Kittelson was hiding in a closet. Id. at 83.

On redirect, Tate testified that he did not personally interview T.D., explaining that "when there is [sic] sexual abuse charges involved, we take [children] to Child Protective Services and have the assessment interview done there by a professional trained person at the agency."[11]

Defense counsel asked to cross-examine Officer Tate about why he had arranged for a CPS interview for Jana as well as T.D. Defense counsel argued that the cross-examination was necessary because Tate's testimony created a false impression that Jana had also accused Kittelson of sexually molesting her, opening the door to questioning about Jana's recantation. The trial court refused to allow defense counsel to question Tate about why he set up an interview for Jana as well as T.D., referring to the earlier, off-the-record limine order:

> The Court: Let the record reflect that prior to passing Corporal Tate back to [the prosecutor] for redirect, [defense counsel] approached the bench and asked whether he could proffer a question to the witness [as to why he set up an interview for Jana]. . . . I don't believe the record is exactly clear on this, but – and the court did talk about this, it's ruling on the motion in limine this morning; but apparently – is it Janet or Jana?
>
> The State: Janet is the mother. Jana is the child.
>
> The Court: Janet's daughter, Jana, whom [T.D.] . . . was spending the night with at the time of this alleged incident also reported some type of sexual contact by the defendant and later the same evening, I am to understand, recanted.
>
> Off the Record
>
> The Court: Despite the fact that Jana recanted the same evening, the Webster Police Department apparently referred her as well as [T.D.] in this case to the Children's Assessment Center for a video interview. [T]he court's opinion is that in

---

[11] Id. at 91. Tate testified that he was unaware of any reported cases of sexual abuse that had involved false allegations and that the Children's Assessment Center was a division "specifically trained in child abuse and sexual allegations; and they have trained interviewers . . . that take care of the interview and that videotape those interviews." Id. at 90, 92.

> asking that question, the jury would hear of Jana's allegation of sexual conduct by this defendant for which she recanted; and the court has already ruled on not allowing it. So, the court disallowed it for that reason.
>
> Defense Counsel:    . . . I am renewing my objection as to the Motion in Limine that you granted in favor of the state and urge that I be allowed to ask [the] question as to why [Jana] was set up for an interview with the Child Assessment interview [sic]. I feel that [Tate's] testimony opened the door as to such and the jury could hear that somebody else was set up for an assessment; and if that's the case, it may be prejudicial not to explore who was set up and why.
>
> The Court:  The ruling stands as it is with regard to the Motion in Limine.  You will not be allowed to mention or allude to in your opening statements or in cross-examination of Jana, the other child, anything concerning the allegations or her recantations.  That's my ruling.  If for some reason the testimony you believe, opens the door approach the bench.[12]

Jana testified as a defense witness, but her testimony was limited to describing what she saw and heard on February 8, 1997.  Defense counsel was not permitted to question Jana about the fact that a month later, after she and T.D. had heard Christine describe her experience with sexual abuse, they both accused Kittelson of improperly touching them, but Jana recanted her accusation the same day.

The psychiatrist, Dr. Quijano, testified that Kittelson did not fit the profile of a sex offender and that, given the circumstances of the outcry – immediately following the babysitter's admonishment and the older girl's description of sexual abuse she had experienced – T.D.'s allegations should be examined closely.[13]  During deliberations, the

---

[12]  Id. at 94-96.

[13]  The trial court precluded defense counsel from asking Quijano about T.D.'s videotaped interview.  Defense counsel objected, identifying three statements from the videotape that he wanted to ask Quijano about:  T.D.'s description of the alleged abuse by Kittelson as a "stupid story"; her use of the words "dick" and "tits"; and her description of Kittelson's penis.  3 Tr. 17-19, 29.

jury asked for the portions of the transcript that showed T.D.'s use of the word "rape" to describe what Christine had told T.D. about the sexual abuse she had experienced.

After the conviction, Kittelson filed a motion for a new trial, stating in part as follows:

> The Court should grant this motion because key and material evidence was improperly excluded during the course of trial. This evidence included prior allegations of sexual abuse from the complainant witness and a recanted outcry from another alleged victim of the defendant. The evidence was crucial to the defense of the case and the barring of this evidence resulted in a material error likely to injure the defendant's rights. This resulted in a verdict contrary to the law and evidence.

Defense counsel filed a juror's affidavit in support of the motion for a new trial. The juror stated in his affidavit that if he had heard evidence on Jana's recanted allegation, he would not have voted to convict. On March 13, 1998, the trial court denied the motion, without a written order.

Kittelson's direct appeal focused on the trial court's refusal to allow him to ask Officer Tate why he had set up an interview through Child Protective Services for Jana as well as T.D. In the appellate brief, Kittelson argued that the trial court's refusal prevented him from correcting "the false impression created by the State that the Appellant sexually assaulted <u>both</u> children." <u>Kittelson v. State</u>, No. 01-98-000194–CR, at 9 (emphasis in original). The appellate brief emphasized that the "crux of the trial was the word of the complainant . . . against the word of the Appellant," with no other witnesses and no medical or physical evidence. In the brief, Kittelson argued that he "was substantially and irreparably harmed by the false impression left that he had also sexually assaulted Jana . . . . A substantive right has been affected herein and [] the error certainly had a substantial and injurious effect or influence in the determination of the jury's verdict." <u>Id.</u> at 10.

The Court of Appeals for the First District of Texas affirmed Kittelson's conviction, over a vigorous dissent. <u>Kittelson v. State</u>, No. 01-98-00194-CR (Tex.App.–Houston [1st

Dist.] Sept. 23, 1999, pet. denied). The majority opinion did not address whether the trial court's initial decision to exclude evidence of Jana's recanted allegation, which was the basis of the ruling to preclude defense counsel from asking Officer Tate why he had sent Jana as well as T.D. for an interview with CPS, was erroneous. Instead, the majority found that Tate had not "opened the door" to the evidence of Jana's recanted accusation against Kittelson. The majority found that the testimony that Officer Tate had sent both Jana and T.D. to be interviewed did not "necessarily" convey the impression that Jana was another "victim" because she was both a witness to the crime and to the "outcry." The court concluded that "while they may have been ambiguous, Officer Tate's responses, narrowly construed, did not create a false impression that [Jana] was appellant's victim." The court alternatively concluded that even assuming that the evidence was improperly excluded, the error was harmless.

The dissent did examine the trial court's initial decision to exclude the evidence of Jana's recanted allegation that Kittelson had improperly touched her as well as T.D. on the night on question. The dissent found that testimony about Jana's recanted allegation was not a collateral matter that could not be raised unless a "door was opened." The dissent found that this testimony was central to the credibility of T.D., whose testimony was the only "direct evidence linking the appellant with the offense." Because Jana was the same age as T.D. and was with T.D. on the night of the alleged incident and when T.D. made her accusations, evidence of Jana's accusation and recantation was directly relevant to T.D's credibility. Finally, the dissent emphasized that the exclusion of the evidence was harmful because it prevented the full presentation of Kittelson's defense theory, that T.D. falsely accused Kittelson after she had been admonished by the baby sitter and after she had heard another child describe how she had been sexually abused. Because Jana had been subject

10

to the same influences and had initially joined T.D. in accusing Kittelson, the fact that Jana had recanted on the same day supported the defense theory.  The dissent, citing to the juror affidavit that Kittelson had filed with his motion for a new trial, concluded that the error did affect Kittelson's "substantial rights to a fair trial" and required a new trial.  The Texas Court of Criminal Appeals refused Kittelson's petition for discretionary review, without opnion.  Kittelson  v. State, PDR No. 1846-99 (Tex. Crim. App. Jan. 12, 2000).

On December 13, 2000, Kittelson filed an application for a writ of habeas corpus in the state court.  Kittelson, proceeding pro se, raised a number of grounds for habeas relief, including the claim that the trial court's refusal to allow defense counsel to cross-examine Officer Tate on his "open door statement," violating (and citing) the Sixth and Fourteenth Amendments to the United States Constitution.  In his state habeas brief, Kittelson argued that the trial court erred in refusing to allow defense counsel to bring up T.D.'s past accusations of sexual abuse against others, to bring up Jana's recanted accusation against Kittelson, and to cross-examine Tate on his "open door statement."  Kittelson argued that denying cross-examination of Officer Tate violated the Confrontation and Due Process Clauses and that refusing to admit evidence of Jana's recanted accusation violated due process.[14]  Kittelson also asserted actual innocence, insufficiency of the evidence, and ineffective assistance of trial and appellate counsel.[15]

---

[14]  Ex parte Kittelson, Application No. 26,181-04, Habeas Record ("H.R.") at 2, 4-9.  In June 2000, Kittelson had filed a Motion for Copies or Access to Records under Tex. Code. Crim. Proc. § 51(a), seeking access to the trial record.  Kittelson eventually sought a writ of mandamus to compel the trial court to rule on the motion or in the alternative, transfer his petition for mandamus to the Texas Court of Criminal Appeals.  On August 16, 2001, the Texas Supreme Court forwarded Kittelson's petition for writ of mandamus to the Texas Court of Criminal Appeals.

[15]  Kittelson's other grounds for relief included the trial court's refusal to allow him access to the trial record to "properly present for appeal his points of error"; prosecutorial misconduct; and the trial court's failure to give limiting instructions about Tate's statement regarding Jana and about his prior convictions.  H.R. 4-9.

In February 2001, the state habeas court – the same judge that had conducted the trial – designated eight issues for resolution under the Texas Code of Criminal Procedure § 3(d).[16]

> Having reviewed the applicant's petition for writ of habeas corpus, the Court finds that the issue of whether Applicant was afforded due process in the primary case needs to be resolved.
>
> Therefore, pursuant to Article 11. 07(3)(d), the Court will resolve the above-cited issue and then enter findings of facts.
>
> The Clerk of the Court is **ORDERED** to transmit a copy of this order designating issues to the Court of Criminal Appeals. The Clerk of the Court is **ORDERED** **NOT** to transmit at this time any other documents in the above-styled case to the Court of Criminal Appeals until further ordered by this Court.[17]

In June 2001, Kittelson filed an addendum to his state habeas application to submit a copy of the juror's affidavit. In July 2002, Kittelson filed two additional submissions, adding two grounds for relief and filing the trial record. One of the new grounds claimed error based on the trial court's refusal to conduct an evidentiary hearing on his motion for a new trial. The second ground asserted a denial of the "right to a complete defense" based on the trial court's exclusion of evidence from both defense and state witnesses.[18]

On April 8, 2003, the state habeas court adopted, verbatim, respondent's proposed findings of fact, finding no basis for habeas relief. On May 21, 2003, the Texas Court of Criminal Appeals denied habeas relief without written order.

---

[16] Section 11.07(d) states that "if the convicting court decides that there are controverted, previously unresolved facts which are material to the legality of the applicant's confinement, it shall enter an order within 20 days of the expiration of the time allowed for the State to reply, designating the issues of fact to be resolved. To resolve those issues the court may order affidavits, depositions, interrogatories, and hearings, as well as using personal recollection." TEX. CODE. CRIM. P. 11.07 (d).

[17] H.R. 99. In May 2001, the State filed its original answer stating that "Applicant raises questions of law and fact which can be resolved by the Court of Criminal Appeals upon review of official court records and without need for evidentiary hearing." H.R. 101.

[18] H.R. 133.

Kittelson timely filed his federal habeas petition, raising eleven grounds of error. Kittelson v. Dretke, No. H. 03-3808 (S.D. Tex. Sept. 18, 2003). The federal district court denied relief on both procedural and substantive grounds and denied a COA. This court granted a COA on the following issues: (1) whether the district court correctly found that Kittelson procedurally defaulted his confrontation clause, due process, and insufficient evidence claims; (2) whether the state trial court deprived Kittelson of his constitutional rights to a fair trial by limiting examination of Officer Tate, T.D., and Jana; and (3) whether Kittelson stated a claim for actual innocence.

## II. Procedural Default

The district court found that two of Kittelson's claims were procedurally defaulted: the confrontation and due process challenges to the trial court's refusal to allow defense counsel to cross-examine Officer Tate with evidence of Jana's recanted accusation; and the challenge to the sufficiency of the evidence.[19] As to the first, the district court held that Kittelson had only raised state law-based evidentiary grounds on direct appeal and in his state habeas application. As to the second, the district court held that Kittelson had failed to challenge the sufficiency of the evidence on direct appeal. We review whether a habeas petitioner's claims have been procedurally defaulted de novo.[20]

Procedural default can occur in two ways. First, "[i]f a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that

---

[19] The district court rejected only some of Kittelson's claims as procedurally defaulted.

[20] Kittelson did not address procedural default in his original brief, but did in his reply brief. Although this frequently results in waiver, Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 (5th Cir. 2004), such a result is not required. See Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996) ("Whether we consider issues not briefed on appeal is a matter of discretion."). Kittelson, who has pursued his claims pro se in compliance with all other state and federal procedural rules, briefed the procedural default issue before the district court and in his motion for a COA filed with this court. We decline to deem this issue waived.

13

procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997). Second, if the prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred, the prisoner has defaulted those claims. Nobles, 127 F.3d at 420; Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001).

To exhaust available state court remedies, a habeas petitioner must "fairly present" all the claims in his habeas corpus petition to the highest available state court, alerting the court to the federal nature of his claim. 28 U.S.C. §2254(d)(2). "A prisoner fairly presents a claim to the state court when he asserts the claim 'in terms so particular as to call to mind a specific right protected by the Constitution' or alleges 'a pattern of facts that is well within the mainstream of constitutional litigation.'" Baldwin v. Reese, 541 U.S. 27 (2004). "[I]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)).

The Texas Court of Criminal Appeals denied Kittelson's habeas application without written order. "Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003). Rather, in such a situation, "our court: (1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." Id. (citing Catalan v. Cockrell, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)). See, e.g., McCall v. Dretke, 390 F.3d 358, 362 n.12 (5th Cir. 2004).

14

The first type of procedural default is not present here; the state court did not dismiss Kittelson's habeas claims based on an adequate and independent state procedural rule. The State argues that in the state courts, Kittelson did not fairly present his confrontation and due process challenges to the trial court's limit on cross-examining Officer Tate. According to the State, Kittelson only argued that the limit on cross-examination violated Texas evidence rules, not the Confrontation Clause or the Due Process Clause.[21] Kittelson responds that he fairly presented his constitutional claims to the state habeas court. In the alternative, he asserts actual innocence.

On direct appeal, the state court found that Kittelson had not raised constitutional claims of error, but rather challenged the exclusion of evidence under Texas state law. Kittelson cited, and the state court analyzed, cases involving the general rule that a witness may not be cross-examined on a collateral matter and the exception for cross-examination to correct a false impression. In his state habeas application, however, Kittelson did make it clear that he was raising federal constitutional claims in challenging the trial court's refusal

---

[21] The State argues that Kittelson presented his claim only under the "rule of optional completeness" and "open door statements." Texas Rule of Evidence 107 provides that:

> When part of an act, declaration, conversation, writing, or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other party, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence.

TEX. R. EVID. 107. See West v. State, 121 S.W.3d 95 (Tex. App.– Fort Worth 2003, pet. denied) (rule of "optional completeness" is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to explain fully and fairly a matter opened up by the adverse party). Most "open door" cases involve impeachment of a defendant who leaves a false impression about prior offenses or troubles with the criminal justice system from his past – " a subject which is usually an irrelevant issue, collateral to the case, and thus inadmissible." See Prescott v. State, 744 S.W.2d 128 (Tex. Crim. App. 1998); Saglimbeni v. State, 100 S.W.3d 429, 435 (Tex.App.– San Antonio 2002, pet. ref'd) ("There is no reason the false impression rule should not work both ways. If the State is permitted to cross-examine a defendant or a defense witness who creates a false impression, the defendant should be permitted to cross-examine a State's witness who creates a false impression.").

to allow him to cross-examine Officer Tate about his reason for sending Jana for an interview with CPS and by asking questions about Jana's recanted accusation. "Where the petitioner urges an issue that he failed to raise on direct appeal . . . he must use available state collateral procedures to satisfy the exhaustion requirement." Lowe v. Scott, 48 F.3d 873, 875 (5th Cir. 1995); see Duncan v. Henry, 513 U.S. 364, 365 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Kittelson's constitutional claims were "fairly presented" in his pro se state habeas application, which referred to his right to cross-examine Officer Tate under the Sixth and Fourteenth Amendments and specifically invoked due process. The State focuses on comparing the second and tenth grounds in Kittelson's state habeas application with the first claim in his federal habeas petition to argue that he did not "fairly present" the state court with his constitutional challenge to the trial court's limit on cross-examining Officer Tate.

Kittelson's first ground in his federal habeas petition states:

> Petitioner was denied his Sixth Amendment right to confront the witness, to wit, Officer Tate who gave a false impression to the jury. This denial kept petitioner from fully developing a defense of innocence. By denying cross-examination of Officer Tate, and examination of Jana.[22]

Kittelson's second point of error in his state habeas application states:

> Trial court abused its discretion by refusing defense counsel the right to cross-examine Officer Tate on his open door statement to res gestae or 'same transaction contextual evidence' on a collateral matter. U.S.C.A. Const. Amend. 6, 14.[23]

---

[22] H-03-3808, at 6.

[23] H.R. 9.

16

Kittelson's tenth point of error in his state habeas application states:

> The trial court deprived applicant of a meaningful opportunity to present a complete defense in violation of . . . the 5th, 6th, and 14th Amendments of the United State Constitution when it limited examination of the defense witness to exclude any testimony related to prior indecency allegations that were either disbelieved or recanted. Likewise the defense was limited by the same ruling to not cross-examine the *state's witnesses* as to any allegations of indecency that were disbelieved *or recanted*. In so doing, applicant was deprived of a fair trial.[24]

Kittelson's state habeas application fairly raised the contention that denying him the right to cross-examine Officer Tate violated the Confrontation and Due Process Clauses.

In his state habeas application, Kittelson also cited Lopez v. State, 989 S.W.2d 402 (Tex. App.– San Antonio 1999, pet. granted), describing it as a case involving whether the application of the state evidence rules had violated a defendant's "confrontation clause right from denial of cross-examination." The State discounts the citation to Lopez because the specific issue in Lopez dealt with the exclusion of prior allegations against others made by a complaining witness in a sexual abuse case, and because the next sentence is about Kittelson's inability to cross-examine T.D. about her prior accusations against others. However, Kittelson specifically invoked the alleged infringement of his confrontation and due process rights "to thoroughly examine state's witness Officer Tate and [T.D.]."[25] Kittelson's discussion of, and citation to, his confrontation, due process, and Sixth Amendment rights "fairly presented" the state courts with his constitutional claims, under federal habeas corpus law.[26] Procedural default is not present on this record.

---

[24]  H.R. 132 (emphasis added).

[25]  H.R. 18-19.

[26]  Kittelson did not raise a sufficiency of the evidence claim on direct appeal. Under Texas law, a prisoner cannot seek habeas review of a sufficiency of the evidence claim that was available but not raised on direct appeal. See TEX.CODE CRIM. PROC. art. 11.07, § 4; Ex Parte McClain, 869 S.W.

### III. Confrontation Clause and Due Process Claims

### A. The AEDPA Standard of Review

"We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." Martinez v. Dretke, 404 F.3d 878, 884 (5th Cir. 2005) (quoting Neal v. Puckett, 286 F.3d 230, 236 (5th Cir.2002) (en banc)). Because Kittelson filed his federal habeas petition on September 11, 2003, the petition is subject to review under the standards established in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Section 2254(d)(1) of that law establishes the narrow conditions under which a federal court may grant a petition for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) addresses pure questions of law and mixed questions of law and fact. Martin v. Cain, 246 F.3d 471, 475 (5th Cir. 2001). Under the first ("contrary to") clause, a federal court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable

349, 350 (Tex. Crim. App. 1994).

18

application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. Section 2254(d)(2) addresses pure questions of fact. Moore v. Johnson, 225 F.3d 495, 501, 504 (5th Cir. 2000). We review the federal district court's determinations of law under AEDPA de novo. Mann v. Scott, 41 F.3d 968, 973 (5th Cir. 1994).

## B. Clearly-Established Federal Law Relating to Kittelson's Confrontation and Due Process Arguments

Kittelson argues that the trial court limited both his right to challenge the testimony of the State's witnesses and his right fairly to present the testimony of his own witnesses. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." United States v. Scheffer, 523 U.S. 303, 329 n.16 (1998) (internal citations and quotations omitted). The Sixth Amendment right to present a complete defense encompasses a defendant's rights under the Confrontation Clause to rebut the State's evidence through cross-examination. See Webb v. Texas, 409 U.S. 95 (1972) (per curiam); Washington v. Texas, 388 U.S. 14 (1967); Taylor v. Illinois, 484 U.S. 400, 410 (1988); see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal citations and quotations omitted). The State does not contest that either the broad Sixth Amendment right to put on a full defense or the Confrontation Clause right to rebut the State's evidence are clearly established through longstanding Supreme Court precedent.

19

Although the right to cross-examination is not absolute, it is effectively denied when a defendant is prohibited from "expos[ing] to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Davis, 415 U.S. at 318; see Chambers v. Mississippi, 410 U.S. 284, 295 (1973). The absence of proper confrontation at trial "calls into question the ultimate integrity of the fact-finding process." Chambers, 410 U.S. at 295. "The right to cross-examination includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." Pennsylvania v. Ritchie, 480 U.S. 39, 51-53 (1987). "[A] denial of cross-examination without waiver . . . would be constitutional error of the first magnitude." Smith v. Illinois, 390 U.S. 129, 131 (1968) (internal quotation marks omitted).

"The Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire." Bigby v. Dretke, 402 F.3d 551, 573 (5th Cir. 2005). A trial judge has discretion to "impose reasonable limits on cross-examination based on concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." See Davis v. Alaska, 415 U.S. 308, 315 (1974); Delaware v. Van Arsdall, 475 U.S. 673, 679-80 (1986). Whether the exclusion of evidence is of a constitutional dimension depends on the trial court's reason for the exclusion and the effect of the exclusion. In determining whether the exclusion of evidence violates a defendant's confrontation rights, the Supreme Court has identified the following factors for a reviewing court to consider: the strength of the prosecution's overall case; the importance of the witness's testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the extent of cross-examination otherwise permitted. Van Arsdall, 475 U.S. at 684; Scheffer, 523 U.S. at 308 (exclusions of evidence are

20

unconstitutional if they "significantly undermine fundamental elements of the accused's defense"); see also United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).

Before a court may grant relief on the basis of a violation of the Confrontation Clause, the court must apply harmless error analysis. See United States v. Stewart, 93 F.3d 189, 194 (5th Cir. 1996) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.") (quoting VanArsdall, 475 U.S. at 684). In a habeas proceeding, the more relaxed harmless error review applies. See Brecht v. Abramson, 507 U.S. 619, 623 (1993) (establishing habeas harmless error standard that prohibits relief unless the constitutional error had a "substantial and injurious effect reached by the jury" and noting that "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict"); see also Nixon v. Epps, 405 F.3d 318, 329 n.13 (5th Cir. 2005) (noting that a federal court must "use the more lenient Brecht review, regardless whether the state court ever conducted a harmless error analysis") (citing Hogue v. Johnson, 131 F.3d 466, 499 (5th Cir. 1997)). "A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious that it renders the petitioner's trial fundamentally unfair." Brown v. Dretke, 419 F.3d 365, 2005 WL 179347, *8 (5th Cir. 2005) (citing Castillo v. Johnson, 141 F.3d 218, 224 (5th Cir. 1998) (additional citations omitted)).

"Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers, 410 U.S. at 298 (citations

21

omitted); <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967). "When cross-examining a witness, the defendant must be permitted to test both the witness's credibility and the witness's knowledge of the facts bearing on the defendant's guilt or innocence." <u>Sixth Amendment at Trial</u>, 91 GEO. L.J. 584, 593-94 (2003) (footnotes and citations omitted). A defendant does not have an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible," <u>Taylor</u>, 484 U.S. at 410, but a restriction on the defendant's right to introduce testimony may not be arbitrary or disproportionate to the purpose it is designed to serve.

## C. The State Court's Application of Clearly-Established Federal Law to Kittelson's Confrontation and Due Process Claims

The prosecution had no evidence of the allegation against Kittelson other than T.D.'s accusation. Excluding the evidence of Jana's recanted testimony left Kittelson unable fully to cross-examine T.D. and Officer Tate, the two critical prosecution witnesses, and unable fully to present evidence from Jana, the only defense witness present with T.D. when the alleged incident occurred and when T.D. made her "outcry." Because of the limits on cross-examination, the jury was left with the impression that Jana had also accused Kittelson, but was deprived of the information about Jana's recantation. The trial court's determination, far from being a standard, discretionary ruling, doubly harmed Kittelson. On the specific and unusual facts presented by this record, the harm was of a constitutional dimension; the state habeas court's determination that Kittelson received a fundamentally fair trial in which he was allowed to present a complete defense was an unreasonable application of clearly-established federal law. <u>Cf.</u> <u>Wilkerson v. Cain</u>, 233 F.3d 886, 891 (5th Cir. 2000) ("[T]he imperative of protecting a defendant's right to effective cross-examination is even more critical where, as here, the witness is crucial to the prosecution's case.").

A review of the record before the state habeas court reveals that Officer Tate testified that he had sent both T.D. and Jana to be interviewed by CPS. Officer Tate's testimony created the impression that Jana had also accused Kittelson of abuse. The state court and the district court discounted this by noting that Jana's presence with T.D. on the night of the alleged event and when T.D. made her "outcry" a month later could have explained Officer Tate's decision to arrange to have Jana interviewed. This analysis ignores Officer Tate's later testimony that such interviews occur "when there is [sic] sexual abuse charges involved." This analysis also ignores the fact that the jury heard that there was a third child present when T.D. first made her "outcry," but Tate did not arrange to have that child interviewed by CPS. Tate's testimony did create an impression that Jana had also accused Kittelson of sexual misconduct. The trial court's refusal to allow defense counsel to ask Tate why he had arranged to have Jana interviewed violated the Sixth Amendment.

The state court also unreasonably applied federal law on due process in finding no constitutional error in the trial court's refusal to permit Kittelson to cross-examine Officer Tate or to elicit testimony from Jana about her recanted allegation. In an unreported hearing, the trial court granted the State's motion in limine and entered the order excluding Kittelson from eliciting any testimony about Jana's recanted accusation. The testimony of Jana's accusation and recantation was not cumulative. A review of the record the state habeas court had before it makes clear that this excluded evidence was paramount to Kittelson's defense. The evidence supported the defense theory that T.D. was influenced falsely to accuse Kittelson by another child's description of sexual abuse and the desire to avoid a reprimand. Kittelson was unable to present the evidence that right after T.D. and Jana heard Christine's description of abuse she had experienced, and right after the babysitter's scolding, both girls accused Kittelson of improperly touching them a month

23

earlier, but Jana recanted that same day. None of the factors articulated by the Supreme Court in Van Arsdale, 475 U.S. at 684, supported the State's limine argument.

The limit on examining Officer Tate also violated due process because Kittleson was not able to present his defense. The State does not argue, and the record does not support, that the trial court was concerned about the prejudicial effect of the jury hearing testimony to the effect that Kittleson had been accused by multiple children. The State's argument that Kittelson was allowed to present a complete defense by eliciting other testimony from Jana and from Parker, the babysitter, does not fairly consider the evidence that was presented to the jury or the evidence that was not presented. The jury heard that Jana was the same age as T.D., had been present with T.D. on the night of the event and when T.D. made her accusation, and, with T.D., was interviewed by CPS. The jury did not hear that Jana had recanted her accusation against Kittelson the same day she and T.D. made the accusations. The testimony that Jana was limited to providing – that she would have heard T.D. leave the tent the night of the alleged abuse – did not directly affect T.D.'s credibility, which was critical to the case. By keeping the information about Jana's recanted accusation from the jury, even after the Officer Tate's testimony created the impression that Jana was also a victim, the trial court violated Kittelson's Sixth Amendment rights. The state habeas court's refusal to rectify this constitutional violation constituted an unreasonable application of clearly-established Supreme Court law on the Confrontation and Due Process Clauses.

Kittelson also argued that the trial court violated his right of confrontation by denying him the right to cross-examine T.D. about two previous allegations of sexual abuse she had made against other people, which may have been "either disbelieved, unproved, or considered harmless." Kittelson cites to Redmond v. Kingston, 240 F.3d 590 (7th Cir. 2001), a federal habeas case in which the petitioner, who was convicted of statutory rape,

24

successfully argued that the state court violated his Sixth Amendment confrontation right by denying cross-examination of the complaining witness about a prior false allegation made against another man. The Seventh Circuit held that the exclusion was an unreasonable application of the Supreme Court's confrontation doctrine. 240 F.3d at 591. "When that unexceptionable rule is applied as it was here to exclude highly probative, noncumulative, nonconfusing, nonprejudicial evidence tendered by a criminal defendant that is vital to the central issue in the case (the accuser's credibility), the defendant's constitutional right of confrontation has been infringed." Id. at 592. The court rejected the argument that other impeachment evidence carried the same probative weight as evidence of the false prior charge. "[T]he fact that the girl had led her mother, a nurse, and the police on a wild goose chase for a rapist merely to get her mother's attention supplied a powerful reason for disbelieving her testimony eleven months later about having sex with another man, by showing that she had a motive for what would otherwise be an unusual fabrication." Id. at 593.[27]

The record as to T.D.'s accusation that some other man had improperly touched her is scant. Although the trial judge instructed the prosecution to obtain a copy of the police report, the record does not show that it was provided to the defense. The State argues that such a prior accusation must be "false" or "recanted" before it is admissible. The record, however, does not show that Kittelson attempted to offer the evidence only to show that T.D. was in the habit of making false accusations of sexual abuse. The evidence also supported Kittelson's defense theory by showing that T.D. had a motive to make up such an accusation

---

[27] In several pre-AEDPA cases, the Fifth Circuit found similar limitations on cross-examination of a young complainant (in lieu of videotaped testimony at which defense counsel was not present) to constitute Sixth Amendment violations that warranted habeas relief because the violations were not harmless under Brecht. Offor v. Scott, 72 F.3d 30 (5th Cir. 1995); Shaw v. Collins, 5 F.3d 128 (5th Cir. 1993); Lowery v. Collins, 988 F.2d 1364, modified by 996 F.2d 770 (5th Cir. 1993).

in order to gain attention and sympathy, as she had received once before, and to show that once T.D.'s accusation had been reported to the police, she was afraid to recant.

This case turned entirely on the T.D.'s word against Kittelson's. His only defense was to show that she made up the accusation. The defense argued that T.D. heard a "big girl" talk about sexual abuse, and, after being reprimanded by a babysitter, made up a story about being abused, which she became afraid to recant after her mother had already filed a police report. The Supreme Court has instructed that "[b]ias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). With no ability to show that Jana had been similarly influenced to accuse Kittelson but promptly recanted, and with no ability to correct the impression that both Jana and T.D. had accused him of sexual contact on the same night, Kittelson essentially had no defense. In a case that turned entirely on the credibility of the complaining witness, the state courts' restriction on Kittelson's ability to challenge that credibility violated his clearly-established confrontation and due process rights and cannot be considered harmless.[28] The state habeas court's unreasonable application of clearly-established federal law had a substantial and injurious influence on the jury's verdict. Relief under § 2254 is warranted.

---

[28] Cf. Wilkerson, 233 F.3d at 892 (concluding that defendant's inability fully to cross-examine credibility of a crucial prosecution witness was not harmless under Brecht); Offor, 72 F.3d at 33 (holding that defendant's Confrontation Clause rights were violated because "[t]he jury may have heard more evidence of Offor's guilt in this case, but not so much more as to allow us to find that the tape had no substantial and injurious influence upon the jury's verdict").

## IV. Conclusion

Because this court finds that Kittelson is entitled to relief under § 2254 based on the exclusion of the evidence about Jana's recanted accusation and Kittelson's inability to cross-examine Officer Tate, it is not necessary to decide whether the exclusion of evidence about T.D.'s prior accusation also violated the Sixth Amendment or to consider Kittelson's claim of actual innocence. The district court's judgment is reversed, judgment in Kittelson's favor is rendered, and this case is remanded to the district court with instructions to enter an order: (1) granting the petition for writ of habeas corpus; (2) setting aside Kittelson's conviction for indecency with a child by contact; (3) ordering the release of Kittelson from custody unless the State grants him a new trial within 120 days; and (4) entering final judgment for Kittelson.

**REVERSED, RENDERED, AND REMANDED WITH INSTRUCTIONS.**