**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-70013

MICHAEL ADAM SIGALA,

Petitioner-Appellant,

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas, Texarkana Division
USDC No. 5:05-CV-177

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

Texas state prisoner Michael A. Sigala filed a federal petition for a writ of
habeas corpus seeking to vacate the death sentence he received following his
conviction for capital murder. The district court denied Sigala the writ, but
granted a certificate of appealability on three issues. After careful review of the
record and applicable law, and following oral argument, we affirm the judgment
of the district court denying the petition.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in Fifth
Circuit Rule 47.5.4.

## I. FACTS AND PROCEEDINGS

Sigala's guilt is not at issue in this appeal. A state jury convicted Sigala of capital murder for causing the death of Kleber Dos Santos during a home invasion. Sigala also murdered and sexually tortured Kleber's wife, Lilian Dos Santos, during the same episode. Following a one-week post-conviction punishment trial, the jury found that there was a probability that Sigala would commit acts of criminal violence and constitute a continuing threat to society, and that there were not sufficient mitigating circumstances to warrant a sentence of life imprisonment rather than death. In accordance with Texas law, the state trial judge then sentenced Sigala to death.

Sigala filed a direct appeal with the Texas Court of Criminal Appeals, which affirmed his conviction and sentence. *Sigala v. State*, 2004 WL 231326 (Tex. Crim. App. Jan. 14, 2004) (unpublished). After the United States Supreme Court denied certiorari, *Sigala v. Texas*, 542 U.S. 909 (2004), Sigala petitioned the Texas state court for collateral relief. The state trial court issued proposed findings of fact and conclusions of law and recommended denying relief. By per curiam order, the Texas Court of Criminal Appeals adopted the trial judge's findings and conclusions and denied relief. *Ex parte Sigala*, No. 62,283-01 (Tex. Crim. App. Aug. 31, 2005).

Sigala timely filed a federal petition for a writ of habeas corpus. The federal district court denied relief, *Sigala v. Quarterman*, No. 5:05-CV-177 (E.D. Tex. Mar. 28, 2008), but granted a certificate of appealability (COA) on three claims. These claims, characterized by the district court as Claims II, III, and IX, allege, respectively, violations of Sigala's right to individualized sentencing, ineffective assistance of counsel in preserving that right, and ineffective assistance of counsel in developing and investigating mitigating factors at sentencing. This appeal followed.

## II. DISCUSSION

*A. Standard of Review*

1. The Anti-Terrorism and Effective Death Penalty Act of 1996

Because Sigala filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, review of his petition is governed by the procedures and standards provided therein. *See Parr v. Quarterman*, 472 F.3d 245, 251–52 (5th Cir. 2006). When a state court has adjudicated a prisoner's claim on the merits, we must defer to the state court and deny the prisoner's habeas claim unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

§ 2254(d)(1)–(d)(2). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified these provisions. Justice O'Connor wrote in her majority opinion that a state court's decision

> will certainly be contrary to [the United States Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . [or] if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id*. at 405–06.

2. Review of claims *not* decided on the merits by the state court

AEDPA standards do not apply, however, where a federal court reviews the denial of a claim on procedural grounds because in such cases there has not been an "adjudication on the merits" by the state court within the meaning of

AEDPA with respect to such a claim. *Hughes v. Quarterman*, 530 F.3d 336, 340 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2378 (2009). We review conclusions by the district court that the petitioner procedurally defaulted on a claim *de novo*. *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005).

*B. Claim II: Right to Individualized Sentencing under* Lockett     Sigala argues that his Eighth Amendment right to individualized sentencing in the capital context, first articulated in *Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (plurality opinion), was violated. "[T]he Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (quoting *Lockett*, 438 U.S. at 604). The focus of Sigala's *Lockett* claim is the trial court's ruling regarding the admission of the testimony of a psychiatrist, Dr. Laura Slaughter,[1] and his medical records.

### 1. Limitations on psychiatric testimony and medical records

The state filed a pretrial motion requesting that the court order Sigala to submit to a psychiatric examination by the state's expert on his future dangerousness if he sought to present testimony on the subject. The court conducted a voir dire hearing of Dr. Slaughter, whose testimony Sigala sought to present. Sigala's trial counsel complained that the jury ought to be permitted to hear her testimony without his client's having to submit to examination by the state's expert, risking self-incrimination. Counsel's theory was that Dr. Slaughter "is a fact witness in this case. . . She was not hired by Mr. Brewer or myself on behalf of Mr. Sigala." The trial court granted the state's motion over Sigala's objection. In the wake of the trial court ruling, Sigala declined to submit

---

[1] Sigala met with Dr. Slaughter four times in sessions lasting approximately fifteen minutes each during his time in custody at the Collin County Detention Center.

to the examination of the state's expert. Accordingly, the trial court permitted Dr. Slaughter to testify to "(1) the fact that she ordered the dispensing of certain medications; (2) the names of those medications but not their purpose; (3) the number of times she met with appellant; and (4) the fact that appellant never caused her any problems." *Sigala*, 2004 WL 231326, at *9. Dr. Slaughter then testified to these facts. The trial court also ordered the defense to redact the portion of the medical records from the jail that contained the diagnosis by Drs. Shoop and Slaughter that Sigala had bipolar disorder.

Claim II (and Claim III, indirectly) requires us to determine whether this ruling narrowed the scope of Dr. Slaughter's testimony and Sigala's records in a way that violated Sigala's constitutional right to individualized sentencing under *Lockett*. In his brief, Sigala characterizes the part of Dr. Slaughter's voir dire testimony that he was not permitted to present to the jury as follows:

> Dr. Laura Slaughter testified that her predecessor, Dr. [James] Shoop, had been a contract, governmental employee, working at the County Detention Center. One of his patients had been Mr. Sigala. When the contract terminated, Dr. Slaughter took over the duties and patients of Dr. Shoop.
> Like Dr. Shoop, Dr. Slaughter also had been a contract, governmental employee, working at the Collin County Detention Center . . . . Dr. Slaughter had been Mr. Sigala's treating physician while he was detained in the Collin County Detention Center. Dr. Slaughter saw Mr. Sigala on four occasions. As a treating physician, Dr. Slaughter had diagnosed Mr. Sigala as having a history of mental illness, and she had treated him for bipolar disorder, depression and sleep problems related to that disorder.

Sigala also complains he was not able to present the following portion of Dr. Slaughter's voir dire testimony regarding bipolarity:

> Bipolar disorder is a mood disorder. It's also called manic depressive disorder, and it's characterized by episodes of a very high, often irritable, expansive mood that can be accompanied with things like impulsive behavior, disturbed sleep, decreased need for

> sleep, rapid speech, those types of things. Those are manic episodes. And then there's also separate depressive episodes which are low, depressed, sad moods that also have sleep/appetite disturbances.

Dr. Slaughter further testified that "the actual mood episodes can clear up on their own, but they tend to be recurring throughout the person's life." She also stated that she adopted Dr. Shoop's findings, records, and interviews in her treatment of Sigala.

The significance Sigala attaches to the trial court's ruling is that the court prevented Dr. Slaughter "from testifying as to her and Dr. Shoop's diagnoses of Mr. Sigala's mental illness and its symptoms, and [wrongly] order[e]d that Dr. [Mark] Cunningham, a defense forensic psychologist, could not use the redacted information to form his opinion about Mr. Sigala."[2]

### 2. Collateral review of the trial court's order

As discussed *supra*, Sigala attacks the state trial court's ruling on Dr. Slaughter's testimony and his medical records on grounds that it denied him the right to present "any relevant mitigating evidence" as part of the Eighth Amendment individualized sentencing determination to which he was entitled under *Lockett*. The Texas Court of Criminal Appeals, on habeas review, found that Sigala had procedurally defaulted on this claim because he failed to raise it both at trial and in his direct appeal. It also found that this failure did not render Sigala's trial counsel constitutionally ineffective because Sigala failed to demonstrate that the trial court's order violated his rights under *Lockett*. *Ex parte Sigala*, slip op. at 6 ("[C]ounsel will not be found ineffective for failing to preserve an alleged error where the law was nonexistent or not definitive at the time of trial. . . . Appellate counsel is not required to present frivolous or futile claims or even every colorable claim.") (citing *Vaughn v. State*, 931 S.W.2d 564,

---

[2] For a discussion of the effect of this ruling, see note 3, *infra*.

568 (Tex. Crim. App. 1996) (per curiam), *Jones v. Barnes*, 463 U.S. 745, 751–754 (1983)). Finally, the court rejected the *Lockett* claim (Claim II) on the merits, holding that any error by the trial court in limiting the testimony of Dr. Slaughter and the admission of Sigala's medical records was harmless. In his federal habeas petition, Sigala renews his *Lockett* claim.

As an initial matter, we must decide whether the Texas Court of Criminal Appeals' alternative holdings constituted rulings on the merits or on procedural grounds. "[T]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default" rather than reevaluating the claim on the merits. *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (quoting *Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir. 1987)). Because procedural default does not constitute an "adjudication on the merits" for AEDPA purposes, the state court's finding of procedural default itself is reviewed *de novo*, however. *Valdez v. Cockrell*, 274 F.3d 941, 946–47 (5th Cir. 2001). In his brief to this court, Sigala does not dispute that his trial counsel procedurally defaulted on the *Lockett* claim (Claim II). Accordingly, we must examine whether Sigala can establish "good 'cause'" and "prejudice" to excuse the default. *Hughes*, 412 F.3d at 592.

As good cause for the default, Sigala cites the ineffective assistance of his trial counsel. This argument necessarily brings his *Lockett* claim back within AEDPA's reach, however: as we discuss *infra*, the state court *did* adjudicate, on the merits, the claim (Claim III) that Sigala's counsel was ineffective in failing to raise his *Lockett* claim; it rejected it. Under AEDPA, then, this court, like the district court, must defer to the state court's findings on Claim III unless they

violate § 2254(d). For the reasons explained in Part II.C., we find they do not violate that provision.[3]

## C. Claim III: Sixth Amendment Claim of Ineffective Assistance as Grounds for Procedural Default on Lockett Claim (Claim II)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel under the Sixth Amendment. To prevail on such a claim, a petitioner must demonstrate both that "(1) counsel's performance was deficient ["cause prong"] and (2) counsel's deficient performance caused actual prejudice to the petitioner's defense ["prejudice prong"]." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (citing *Strickland*, 466 U.S. at 687). To meet the cause prong, Sigala must establish that his counsel's actions were objectively unreasonable. *Strickland*, 466 U.S. at 687–91. "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by

---

[3] Because we hold that Sigala has failed to demonstrate good cause for his default, we need not reach the prejudice analysis. However, we agree with the state court that any error by the trial court was harmless and without prejudice to Sigala.

Sigala complains that Dr. Slaughter was not able to testify to the conclusions she and Dr. Shoop, her predecessor in treating Sigala, reached after treating Sigala. But his counsel cross-examined the state's expert, Dr. Lisa Clayton, on that very subject. Specifically, Sigala's counsel elicited from Dr. Clayton that she had trained Dr. Slaughter, and that she thought Dr. Slaughter was a good psychiatrist. Sigala's counsel admitted Sigala's medical records (Defendant's Exhibit 4), into evidence, and asked Dr. Clayton about them. Dr. Clayton testified, on the basis of those records, that Dr. Slaughter had diagnosed him as bipolar. She then explained what bipolar meant. She further stated that two psychiatrists had diagnosed Sigala as bipolar and had also prescribed medication for him. She explained what that medication did, specifically its effect on controlling a person's urges. Although she noted all these things, Dr. Clayton said she simply disagreed with Dr. Slaughter's (and Dr. Shoop's) diagnosis.

At closing argument, Sigala's counsel revisited this issue, arguing: "And look at the evidence. Dr. Clayton, again, what did she say? I had her review the records from the Collin County jail. Two psychiatrists have seen Michael and diagnosed him as bipolar, put him on medication to treat that disease, that mental illness, but to her that was just a big waste. Those two psychiatrists were wrong. She never even looked at those records."

Given that Sigala's counsel succeeded in admitting all this evidence, to say that limiting Dr. Slaughter's testimony was not merely error, or constitutional error, but that it would probably have resulted in a different outcome, is untenable.

officials made compliance impracticable, would constitute cause under this standard." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations and quotation marks omitted). To meet the prejudice prong, he must demonstrate that there is a reasonable probability that the result in the case would have been different had his counsel performed reasonably. *Strickland*, 466 U.S. at 692–96.

Sigala's ineffective assistance claim was decided on the merits by the state court. Accordingly, AEDPA governs. To prevail on Claim III, therefore, Sigala must show that the rights he claims were ineffectively represented were "clearly established" at the time his conviction became final. § 2254(d)(1).

In rejecting Sigala's ineffective assistance claim on the merits, the Texas Court of Criminal Appeals held that "[t]rial counsel was not ineffective for failing to lodge an Eighth Amendment objection" because Sigala had not demonstrated that his *Lockett* rights had been violated. *Ex parte Sigala*, slip op. at 6. "[C]ounsel will not be found ineffective," the court found, "for failing to preserve an alleged error where the law was nonexistent or not definitive at the time of trial." *Id.*

Although his post-trial proceedings are now in their eighth year, Sigala remains unable to substantively allege that his *Lockett* claim, had it been timely raised and developed, was "clearly established" at the time his conviction became final (or even whether it is today). He points to several decisions of the Texas Court of Criminal Appeals in other cases and a secondary source[4] that he claims distinguish between the testimony of a treating physician and that of a psychiatric expert retained for litigation. Because the state court's decision on Claim III was on the merits, AEDPA requires that we defer unless the state court decision conflicts with United States Supreme Court precedent. *See* §

---

[4] Dexter E. Gilford, *Constructive Waiver and Compelled Defendant Interviews: Understanding the* Lagrone *Doctrine and Implementing Strategies for Limiting its Effect part one*, VOICE FOR THE DEFENSE, Mar. 2006, at 14, 19.

2254(d)(1) (challenged state court ruling must have constituted "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*" in order for federal court to grant habeas) (emphasis added). Decisions of the Texas courts in other cases, even if they were on point, plainly would not satisfy this requirement.

In addition to the secondary source and Texas Court of Criminal Appeals precedents, Sigala claims that *Lockett* and other United States Supreme Court decisions support overturning the state court's decision regarding Claim III. A state court's decision is contrary to Supreme Court precedent, and thus habeas may be granted by a federal court in an AEDPA case, if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams*, 529 U.S. at 405. Although the decisions Sigala references[5] require that evidence of mitigation be permitted at sentencing, and that a defendant be given considerable latitude in presenting such evidence, including evidence of a defendant's psychological make-up, they do not plainly stand for Sigala's proposition. No Supreme Court decision has looked at *Lockett* and its impact in a situation like Sigala's, so he cannot argue that the state court reached a conclusion opposite to that reached by the Supreme Court. He therefore cannot meet the AEDPA requirement to show a "clearly established" right to his preferred presentation of such evidence

---

[5] *E.g., Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (concluding that "'evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'" (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *McCleskey v. Kemp*, 481 U.S. 279, 306 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 4–5 (1986).

under *Lockett*. Accordingly, we must defer to the state court's decision that his counsel's failure to attempt to "preserve" such a right was not unreasonable.[6]

## D. Claim IX: Ineffective Assistance of Counsel in Presenting Mitigating Evidence

Sigala asserts in Claim IX a second claim of ineffective assistance of counsel: at the punishment phase of his trial, he alleges, his trial counsel failed to investigate, develop, and present crucial mitigating evidence, in violation of his Sixth Amendment rights under *Strickland*. The state court decided this claim on the merits, *Ex parte Sigala*, slip op. at 21; therefore, AEDPA governs. To overcome the deference to which the state court is entitled under that statute, Sigala must first show that the state court's adjudication of this claim was either contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. § 2254(d)(1). If demonstrated, this would satisfy the first *Strickland* prong, cause, because it would show that his counsel's representation was unreasonable.

The federal district court concluded that Sigala's counsel had made poor strategic decisions regarding mitigation that are "precisely the course of conduct the Supreme Court deemed unreasonable [for *Strickland* cause purposes] in *Wiggins* [*v. Smith*, 539 U.S. 510, 524 (2003)]." *Sigala*, slip op. at 18. But even assuming *arguendo* that the strategic decisions of Sigala's counsel were unreasonable, Sigala cannot demonstrate, as he is required to by the second *Strickland* prong, that they prejudiced his mitigation case.

The Texas Court of Criminal Appeals held that Sigala "presented substantial evidence fairly portraying [Sigala's] background that the jury could have viewed as mitigating" but that because the crimes had been egregious, he had a criminal history, and he did not express remorse, "it is improbable that

---

[6] Because Sigala cannot satisfy the first prong of *Strickland* here, we need not reach the question of prejudice. However, we believe, for the reasons explained *supra* at note 3, that Sigala was not prejudiced by the curtailment of the right he seeks to claim.

additional, especially cumulative, evidence would have benefitted [Sigala]." *Ex parte Sigala*, slip op. at 21. In order to grant relief for Sigala's ineffective assistance claim, we would have to find the state court's decision not merely erroneous, but objectively unreasonable. *See Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). We agree with the district court, and the state court, that the additional evidence of mitigation Sigala contends his trial counsel should have introduced would have been unlikely to help him, and that accordingly, he is unable to demonstrate *Strickland* prejudice. *See Sigala*, slip op. at 19–21.

The transcript of the punishment phase of the trial supports this conclusion. During that stage, the jury learned that Sigala abused drugs and had attended drug rehabilitation centers; had been expelled from school; that his mother had taken pains to take care of him financially and medically; and that he had had a substantial criminal history involving thefts, marijuana possession, and robbery. He also participated in gang activities. In addition, he was diagnosed with antisocial personality disorder and described as a "sadistic sexual predator." It is hard to see how the additional evidence Sigala claims Dr. Slaughter would have offered, or the fact that it would have come from a treating physician, would have added so significantly to his mitigation case that the outcome would likely have been different.[7] Accordingly, under AEDPA, we must

---

[7] Sigala also contends that two responses to jury questionnaires support his claim that the jury would have been more sensitive to more mitigating factors had they been informed of them. We disagree. Both answers respond to the question, "What is the most persuasive argument for sentencing someone to a term of life imprisonment who is guilty of murder?" The first response was, "If there were mitigating circumstances which would call for life and not death"; the second was simply "individual instability." These answers merely indicate considerations in the abstract that might disincline these jurors to support the death penalty. It is unlikely that these questionnaire responses, given the substantial evidence of mitigation and of Sigala's mental problems that the jury did hear—including the testimony of his own forensic psychologist, Dr. Cunningham; his medical records; and the favorable information he elicited on cross examination from the state's expert, Dr. Clayton—would allow Sigala to satisfy the demanding burden of *Strickland*, i.e., to establish a reasonable probability that the

defer to the state court's reasonable finding that Sigala has not shown that the sentencing outcome would probably have been different but for the asserted error.[8]

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court. The petition for a writ of habeas corpus is DENIED.

---

sentence would have been different. This is especially true given the grisly nature of the crime. *See Strickland*, 466 U.S. at 699 (finding no prejudice given that "the aggravating circumstances were utterly overwhelming"); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999) (similar analysis). For a discussion of the details of the crime, *see Sigala*, 2004 WL 231326, at *1; *Sigala*, slip op. at 1–2.

[8] At oral argument, counsel for Sigala raised for the first time the additional argument that Sigala's trial counsel had failed to introduce during the punishment phase "hard scientific evidence" rather than evidence of "what [psychologist] Dr. Cunningham did." Counsel contended at oral argument that "the scholarly literature" suggests that Sigala's drug addiction meant "there's a very real likelihood that he could be brain damaged," and that Sigala's trial counsel were therefore "on notice of . . . possible brain damage, they were on notice that they needed to hire some sort of . . . have the neurotesting done and have the MRI's done to determine whether or not there was in fact brain damage."

Arguments raised for the first time at oral argument are deemed waived. *E.g., Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 232 (5th Cir. 2004). Were we to consider this argument, however, the result in this case would be no different. Sigala's appellate counsel has failed to cite any authority establishing the proposition that the Constitution per se requires counsel for defendants with a history of drug use to proffer at the punishment phase the results of "neurotesting" and an MRI instead of, or in addition to, the psychological, character, and other mitigating evidence they choose to proffer. This court certainly has not so held.