**REVISED**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-31054
_____


UNITED STATES OF AMERICA

                    Plaintiff - Appellee

v.

JIMMY LEE RASCO; MARCUS A MILTON

                    Defendants - Appellants


_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

September 12, 1997

Before KING, DUHÉ, and WIENER, Circuit Judges.

KING, Circuit Judge:

     Jimmy Lee Rasco and Marcus Milton were convicted of
conspiracy to commit armed bank robbery, armed bank robbery, and
carrying and using a firearm during a crime of violence.  Rasco
was also convicted of possession of a firearm by a convicted
felon and, because the armed robbery was his third "serious
violent felony," sentenced to life imprisonment pursuant to 18
U.S.C. § 3559(c), the "three strikes" statute.  Rasco challenges
his sentence on the grounds that the "three strikes" statute is
unconstitutional and inapplicable in this case.  We hold that
§ 3559(c) does not violate either separation of powers or <u>ex post</u>

<u>facto</u> principles and that the district court properly applied § 3559(c) to Rasco in this case.  We further hold that the district court properly denied Rasco and Milton's motions for judgment of acquittal or, in the alternative, for a new trial.  The judgment of the district court is affirmed in all respects.


## I. <u>BACKGROUND</u>

On July 6, 1995, two unidentified black males committed an armed robbery of the Hibernia National Bank on Ellerbe Road in Shreveport, Louisiana, taking approximately $7,300.  The two men fled the bank in a Chevrolet Suburban driven by a third black male.  Michael G. Moore, Sr. and his son, Michael G. Moore, Jr., were driving by the bank when the Suburban sped out of the bank parking lot in front of their truck.  Observing red smoke and money coming out of the Suburban, the Moores followed the vehicle and called 911 from their car telephone.  They watched the three men get out of the Suburban and into a Ford Mustang which was later identified as belonging to defendant Jimmy Lee Rasco.  The Moores attempted to follow the Mustang but lost the trail.  The police found the Mustang abandoned in a wooded area and, shortly thereafter, arrested Vincent West within the perimeter they had established around the vehicle.  The police questioned two juveniles, Robert Taylor and Elton Kimble, who were nearby.  The youths reported that a black male had offered to buy a bicycle from them with a $100 bill and provided a general description of the man.  Based on this description and the use of the Ford

Mustang, the police eventually arrested Rasco. Rasco denied any involvement in the case.

A federal grand jury indicted Rasco and West for armed bank robbery, use of a firearm during a crime of violence, and possession of a firearm. On October 3, 1995, the government filed a Notice and Information pursuant to 18 U.S.C. §3559(c), commonly known as the "three strikes you're out" provision, which gave notice that Rasco had two prior "serious violent felony" convictions and that he was subject to mandatory life imprisonment if convicted of a third.

West pleaded guilty to the charges in the indictment and agreed to cooperate with the government. On January 10, 1996, the grand jury returned a superseding indictment that charged Rasco and defendant Marcus A. Milton with conspiracy to commit armed bank robbery in violation of 18 U.S.C. §§ 371, 2113(a), 2113(d); armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), 2113(d); and carrying and using a firearm during a crime of violence in violation of 18 U.S.C. §§ 2, 924(c). The indictment also charged Rasco with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 2, 922(g)(1), 924(e)(1).

The jury convicted Rasco and Milton on all counts. The district court sentenced Rasco to life imprisonment and a consecutive term of sixty months and ordered restitution in the amount of $2436.16 to Hibernia National Bank. Milton was sentenced to three consecutive five-year terms of imprisonment.

3

Defendants filed motions for judgment of acquittal or, in the alternative, for a new trial. The district court denied their motions. On appeal, Rasco argues that the "three strikes" statute violates separation of powers and ex post facto principles and that one of the two prior convictions relied upon is not a "serious violent felony" and thus not a proper predicate offense under § 3559(c). Rasco and Milton both contend that the district court erred in denying their motions for judgment of acquittal or a new trial, arguing that (1) the evidence was insufficient to support their convictions, (2) the prosecutor made improper comments during closing argument, and (3) mid-trial publicity prejudiced the jury. In connection with his argument concerning trial publicity, Rasco further contends that the district court erred in denying his request for full attorney-conducted voir dire. We conclude that each of these arguments is without merit.

## II. DISCUSSION

A.   The "Three Strikes" Statute

Congress enacted the "three strikes" statute as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796. Codified as 18 U.S.C. § 3559(c), this statute imposes mandatory life imprisonment on a person convicted of a "serious violent felony" in a federal court if

> (A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of --

4

> (i) 2 or more serious violent felonies; or
>
> (ii) one or more serious violent felonies and one or more serious drug offenses; and
>
> (B) each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense.

18 U.S.C. § 3559(c). The statute defines "serious violent felony" to include several enumerated offenses (including robbery pursuant to § 2113) as well as

> any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F). We review the constitutionality of a federal statute and the district court's interpretation of a statute de novo. See United States v. Bailey, 115 F.3d 1222, 1225 (5th Cir. 1997); United States v. Barlow, 41 F.3d 935, 942 (5th Cir. 1994), cert. denied, 514 U.S. 1030, and cert. denied, 514 U.S. 1087 (1995).

Rasco first argues that, by providing for mandatory life imprisonment, § 3559(c) removes sentencing discretion from the court and vests it with the prosecution in violation of the doctrine of separation of powers. Rasco maintains that judicial discretion in sentencing "is essential to preserve the Constitutionally required fundamental fairness of the criminal justice system." Although the judiciary has exercised varying degrees of discretion in sentencing throughout the history of

5

this country's criminal justice system, it has done so subject to congressional control.  The Supreme Court has stated unequivocally that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467 (1991).  In affirming the constitutionality of the federal sentencing guidelines and the delegation of sentencing authority to the Sentencing Commission, the Supreme Court recognized that "Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control."  Mistretta v. United States, 488 U.S. 361, 364 (1989) (citation omitted).  The power to fix sentences rests ultimately with the legislative, not the judicial, branch of the government and thus the mandatory nature of the punishment set forth in § 3559 does not violate the doctrine of separation of powers.  See United States v. Washington, 109 F.3d 335, 338 (7th Cir. 1997) (holding that § 3559(c) does not offend principles of separation of powers), petition for cert. filed (June 16, 1997) (No. 96-9415).

Rasco next contends that § 3559 violates the Ex Post Facto Clause of the Constitution, which prohibits the imposition of "a greater punishment, than the law annexed to the crime, when committed."  Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798); see also Weaver v. Graham, 450 U.S. 24, 28 (1981) ("The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not

6

punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" (quoting <u>Cummings v. Missouri</u>, 4 U.S. (4 Wall.) 277, 325-26 (1867))(footnote omitted)).

The Supreme Court has held that recidivist statutes not unlike that at issue here do not violate the Ex Post Facto Clause. <u>See</u> <u>Gryger v. Burke</u>, 334 U.S. 728, 732 (1948) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."). This circuit has likewise rejected <u>ex post facto</u> challenges to recidivist statutes. <u>See</u> <u>United States v. Saenz-Forero</u>, 27 F.3d 1016 (5th Cir. 1994) (holding that use of a 1985 drug conviction to enhance defendant's sentence did not violate the Ex Post Facto Clause even though the drug conviction was not classified as an "aggravated felony" for enhancement purposes until 1988); <u>Perkins v. Cabana</u>,(upholding a Mississippi recidivist statute against an <u>ex post facto</u> challenge). With respect to § 3559(c) in particular, the Seventh and Eighth Circuits have considered and rejected <u>ex post facto</u> challenges similar to the one presented here. <u>See</u> <u>Washington</u>, 109 F.3d at 338; <u>United States v. Farmer</u>, 73 F.3d 836, 840-41 (8th Cir.), <u>cert. denied</u>, 116 S. Ct. 2570 (1996). We join those circuits in

7

holding that § 3559(c) does not violate the Ex Post Facto Clause.[1]

Rasco argues that even if § 3559(c) is constitutional, it does not apply in this case because his prior conviction for aggravated battery under Louisiana state law is not a "serious violent felony" within the meaning of the statute. As indicated above, § 3559(c) defines "serious violent felony" to include an "offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another." Rasco contends that aggravated battery is not a "serious" violent felony because it is classified as a "relative felony" rather than an "absolute felony" under Louisiana law. Rasco further contends that aggravated battery is not a "serious violent felony" because the maximum sentence for the offense is "not more than ten years."

The Louisiana Criminal Code defines "felony" as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." LA. REV. STAT. ANN. § 14:2(4) (West 1986). The code does not distinguish between "absolute" and "relative"

_____

[1] Rasco's reliance on Miller v. Florida, 482 U.S. 423 (1987), is inapposite. In Miller, the Supreme Court invalidated on ex post facto grounds the application of revised state sentencing guidelines to a defendant whose crime had occurred four days prior to the effective date of the revised guidelines. In other words, the legislature had effectively increased the punishment for the offense after it was committed. Here, in contrast, the "three strikes" provision under which Rasco was sentenced became effective prior to the date on which he committed the offense for which he was sentenced.

felonies.  Aggravated battery is defined as "a battery committed with a dangerous weapon," and is punishable by imprisonment with or without hard labor for "not more than 10 years."  LA. REV. STAT. ANN. § 14:34 (West 1986).  Aggravated battery thus is a felony under Louisiana law and "has as an element the use, attempted use, or threatened use of physical force against the person of another," as required by § 3559(c).  Further, the offense may be punished by ten years in prison, and thus is an "offense punishable by a maximum term of imprisonment of 10 years or more."  18 U.S.C. § 3559(c)(2)(F)(ii) (emphasis added).  We conclude that aggravated battery under Louisiana state law is a "serious violent felony" as defined in § 3559(c)(2)(F)(ii) and that Rasco's conviction is therefore a proper predicate offense for sentencing pursuant to § 3559(c)(1).


B.   Motions for Judgment of Acquittal or New Trial

    1.   Sufficiency and weight of the evidence

    Rasco and Milton argue that the district court should have granted their motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure based on insufficiency of the evidence.[2]  They argue in the alternative

---

[2]   Rule 29 provides, in relevant part:

The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

that the district court should have granted their motions for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure because the verdict was against the weight of the evidence and the interests of justice would be best served by a new trial.[3]

We review the district court's denial of a motion for judgment of acquittal de novo. United States v. Castaneda-Cantu, 20 F.3d 1325, 1330 (5th Cir. 1994). We must affirm the jury verdict if, viewing all the evidence and drawing all reasonable inferences in favor of the verdict, a reasonable trier of fact could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt. United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir.), cert. denied, 506 U.S. 918 (1992); see also Jackson v. Virginia, 443 U.S. 307 (1979). It is not for the court, upon motion for judgment of acquittal, to weigh the evidence or assess the credibility of witnesses. Sanchez, 961 F.2d at 1173. However, if the evidence viewed in the light most favorable to the government supports an equal or nearly equal theory of guilt and of innocence, we must reverse the conviction because a reasonable jury, under these circumstances, necessarily entertains a reasonable doubt. Id.

We review the district court's decision whether to grant a new trial for abuse of discretion. United States v. Cooks, 52

_____

FED. R. CRIM. P. 29(a).

   [3] Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R. CRIM. P. 33.

10

F.3d 101, 103 (5th Cir. 1995).  A new trial is granted "only upon demonstration of adverse effects on substantial rights of a defendant."  Id.

Both defendants were convicted of conspiracy to commit bank robbery, bank robbery, and use of a firearm during a crime of violence, and Rasco was convicted of being a felon in possession of a firearm.  Neither defendant disputes that the government proved that an armed bank robbery took place at Hibernia National Bank on Ellerbe Road in Shreveport on or about July 6, 1995.[4] Rather, Rasco and Milton argue that the evidence adduced at trial was insufficient to link them to the offense.

The government's key witness was Vincent West, who testified that the day before the robbery he, Rasco, and Milton planned to commit a robbery.  West testified that on the day of the robbery the three men agreed to rob the Hibernia Bank on Ellerbe Road, and that Rasco and Milton, both armed with handguns, committed the robbery while West waited in the Suburban.  When presented at trial with pictures taken by bank surveillance cameras, West identified Rasco as the individual standing on the bank counter

_____

[4]  To prove the offense of bank robbery in violation of 18 U.S.C. § 2113(a), the government must show that (1) an individual or individuals (2) used force and violence or intimidation (3) to take or attempt to take (4) from the person or presence of another (5) money, property, or anything of value (6) belonging to or in the care, custody, control, management, or possession (7) of a bank, credit union, or savings and loan association. United States v. McCarty, 36 F.3d 1349, 1357 (5th Cir. 1994). The punishment may be enhanced when, in committing or attempting to commit the offense, the defendant assaulted another person or put in jeopardy the life of another person by the use of a dangerous weapon or device.  18 U.S.C. § 2113(d).

11

with a gun in his hand.  West stated that he recognized the white face of the watch that Rasco was wearing.  In addition, the evidence showed that Kimble and Taylor, the two juveniles questioned by police, identified Rasco in a photo lineup as the man who had offered to buy the bicycle on the day of the robbery. Taylor identified Rasco at trial as the man he had seen that day.

Without reviewing all of the evidence presented by the government, we note that it is well-established in this circuit that a defendant may be convicted based upon the uncorroborated testimony of a co-conspirator.  United States v. Hernandez, 962 F.2d 1152, 1157 (5th Cir. 1992).  The jury apparently found West to be credible and chose to believe his testimony rather than the alibi testimony presented by Rasco and Milton.  Our review of the record leads us to conclude that the evidence was sufficient to support the convictions of both defendants on all counts. Similarly, we conclude that the verdict is not contrary to the weight of the evidence and the district court did not abuse its discretion in denying the motions for a new trial.

2.   Prosecutor's remark during closing argument

During his rebuttal argument the prosecutor noted that defense counsel had made reference in closing to a "Deputy Menefee" despite the fact that no "Deputy Menefee" had testified during trial.  The prosecutor remarked that the defense could have called Deputy Menefee or another officer who had written a report on the incident but chose not to, and thus was attempting "to make an issue out of non-evidence."  Rasco and Milton contend

12

that this remark was improper and prejudicially affected their substantial rights by shifting the burden of proof to the defense. They argue that the district court should have granted their motions for a new trial on the basis of this prosecutorial misconduct.

Significantly, the prosecutor's remark was made in response to defense counsel's reference to an individual who was not a witness in the case. The prosecutor's remark did not improperly invite the jury to draw an inference from the defense's failure to call a certain witness, but suggested that the defense was attempting to rely on evidence that had not been introduced. Even assuming that the prosecutor's comment was improper, Rasco and Milton have made no showing that the comment prejudicially affected their substantial rights. "The test to be applied in cases such as these is well settled: Does the prosecutor's argument, taken as a whole in the context of the entire case, prejudicially affect substantial rights of the defendant?" United States v. Corona, 551 F.2d 1386, 1388 (5th Cir. 1977). The comment at issue here concerned the existence of evidence tending to undermine the reliability of Elton Kimble's identification of Rasco from the photo lineup. Even without Kimble's photo identification of Rasco, the jury could have concluded from West's testimony and from Robert Taylor's identification of Rasco in court that Rasco was one of the bank robbers. The district court did not abuse its discretion in

13

declining to grant the motion for new trial on the basis of the prosecutor's remark.

    3.   <u>Mid-trial publicity</u>

Rasco and Milton contend that mid-trial publicity concerning Rasco's prior criminal record and the applicability of the "three strikes" provision was inherently prejudicial and the district court abused its discretion by failing to poll the jury on exposure to trial publicity. As "every claim of potential jury prejudice due to publicity must turn upon its own facts," <u>United States v. Aragon</u>, 962 F.2d 439, 444 (5th Cir. 1992), we review the facts related to trial publicity in this case.

On the first day of the trial, and each day during, <u>The Shreveport Times</u>, the only local newspaper, ran a story in the local/state section containing a brief statement of the status of the trial and a statement that Rasco faced a possible life sentence under the federal "three strikes" provision due to his two prior convictions. During jury selection, the district judge did not question prospective jurors about possible exposure to new accounts of the trial. After the jury had been sworn in and excused for a recess, Rasco's attorney, Dan Burt, mentioned to the judge that there had been no questioning regarding trial publicity. The following exchange took place:

>    Mr. Burt:  There was no questioning about publicity, and it might be something that could be handled in the back room quietly with no problem.

>    The Court:  Mr. Burt, everything that's missing, that is fair game for you and Mr. Rasco. We are at the stage of the trial that nothing is curable at this

moment.  We are going to have to try this case today and tomorrow.

 Mr. Burt:  I understand.

 The Court:  And if you think there has been publicity about this case, I'll direct them not to read or to listen, nor to talk.  That's a closing instruction at the end of the afternoon normally, and a beginning instruction.

 Mr. Burt:  Right, and maybe throw in, "And if you happen to have read something, put it out of your mind."

 The Court:  Right.

 Mr. Burt:  That's what we would have done on voir dire anyway.

 The Court:  All right.

As agreed, the court instructed the jury to disregard any publicity about the trial.  Nevertheless, during jury deliberations, the jury foreman sent a note to the judge stating that "One of the jurors has mentioned that Rasco is subject to the '3 strikes you're out rule.'"  Although Rasco had stipulated to a prior conviction for purposes of the count charging him with being a convicted felon in possession of a firearm, no evidence as to the applicability of the "three strikes" statute had been introduced during trial.  The judge received the jury's note in chambers and summoned counsel to discuss an appropriate response.  They agreed to resubmit to the jury a photocopy of the second paragraph of Jury Instruction Number 16, which provided:

If a defendant is found guilty, it will be my duty to decide what the punishment will be.  You should not be concerned with punishment in any way.  It should not enter your consideration or discussion.

15

In addition, the judge instructed the jury in writing to "[p]lease reread instruction number 16 - second paragraph (see attached)." Rasco's counsel did not request that the court determine the extent of the jury's exposure to the trial publicity.

The trial judge has broad discretion in ruling on the issue of prejudice resulting from a jury's exposure to news articles concerning a trial. Aragon, 962 F.2d at 443. "It is for the trial judge to decide at the threshold whether news accounts are actually prejudicial; whether the jurors were probably exposed to the publicity; and whether the jurors would be sufficiently influenced by bench instructions alone to disregard the publicity." Gordon v. United States, 438 F.2d 858, 873 (5th Cir.), cert. denied, 404 U.S. 828 (1971).

There are a number of facts specific to this case that, taken together, lead us to conclude that the district court did not abuse its discretion in declining to voir dire the jury concerning exposure to trial publicity. First, the three news articles in the record are brief factual accounts of the bank robbery trial that contain little information about Rasco's prior criminal record. They state that Rasco has "two prior convictions" and is being tried subject to the federal "three strikes you're out" rule which would mandate a life sentence if Rasco were found guilty. No article in the record indicates the nature or seriousness of Rasco's prior offenses. Second, the jury was aware that Rasco had at least one prior conviction given

16

the charge of being a convicted felon in possession of a firearm and Rasco's stipulation to a prior conviction. This mitigates the potential prejudice of news indicating that Rasco in fact had two prior convictions. Moreover, as the district court noted, knowledge by the jury of the applicability of the "three strikes" rule and its mandatory life sentence could have benefitted Rasco in the course of jury deliberations as easily as it could have prejudiced him. Third, counsel for Rasco agreed after the jury was sworn in that instructions to disregard trial publicity would suffice to ensure a fair trial. This was effective trial strategy on the part of defense counsel; insisting on voir dire likely would have raised the level of emphasis on Rasco's prior convictions. Even after learning during deliberations that one juror had knowledge that the "three strikes" rule applied, defense counsel agreed after consultation with the court that reiteration of the instruction to ignore issues of sentencing was an adequate response. Finally, the jury in fact was admonished repeatedly to disregard all media accounts of the trial and to ignore issues of punishment during deliberations.

Rasco and Milton insist that the district court was required to voir dire the jury in light of the mid-trial publicity, citing Aragon, supra. In Aragon, a drug smuggling case, this court held that the district court abused its discretion in denying defense counsel's request at the commencement of trial to poll the already-empaneled jury regarding exposure to a highly prejudicial article that appeared that morning in the local paper. 962 F.2d

17

at 442-47.  Of great significance to the court was the fact that the article was prominently located on the front page of the metro section of the newspaper and went into substantial detail, far beyond the record, concerning the defendant's "'history'" of drug arrests and convictions as well as his alleged boasting about smuggling large quantities of marijuana and having earlier dealings with a reputed drug kingpin in Mexico.  Id. at 441-42 & n.4.  The Aragon court distinguished another Fifth Circuit case, United States v. Manzella, 782 F.2d 533 (5th Cir.), cert. denied, 476 U.S. 1123 (1986), in which we upheld the defendant's conviction despite the district court's failure to voir dire the jury after publication of a news article concerning the trial. Aragon, 962 F.2d at 446.  Unlike the article at issue in Aragon, the article in Manzella mentioned the defendant's prior conviction in one small paragraph at the end of the medium-length article.  Manzella, 782 F.2d at 543.  We concluded that although the article's reference to a prior conviction was prejudicial, "the chances of its actual influence over the jury's decision-making [are] minuscule."  Id.

Our cases indicate that whether a district court abuses its discretion in declining to voir dire a jury following mid-trial publicity depends on the specific circumstances of the case. Under the circumstances here, the district court was within its discretion to decline to voir dire the jury and a new trial is not warranted on this ground.

18

### 4. Attorney-directed voir dire

Finally, Rasco argues that he was deprived of a fair trial because the district court denied his motion for full attorney-directed voir dire. We review the manner in which the district court conducts voir dire for clear abuse of discretion. United States v. Rowe, 106 F.3d 1226, 1227 (5th Cir. 1997).

Rasco claims that examination of potential jurors by defense counsel would have revealed that some of the jurors had knowledge of Rasco's criminal history as a result of media publicity. Rasco's counsel, however, suggested at the conclusion of jury selection that the court could handle the publicity issue "in the back room quietly with no problem," and stated that admonishing the jury to ignore any information that they might have been exposed to was "what we would have done on voir dire anyway." Furthermore, the requested jury questions that defense counsel submitted to the court before voir dire did not specifically inquire into exposure to media publicity.

The trial court has broad discretion to determine who will question potential jurors and what questions will be asked. Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981). Rule 24(a) of the Federal Rules of Criminal Procedure provides:

> The court may permit the defendant or the defendant's attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

19

FED. R. CRIM. P. 24(a) (emphasis added).  The district court did not abuse its discretion in its conduct of voir dire in this case.


### III. <u>CONCLUSION</u>

We hold that 18 U.S.C. § 3559(c) does not violate separation of powers or <u>ex post facto</u> principles and was properly applied to Rasco in this case.  We further hold that the evidence was sufficient to support the convictions of Rasco and Milton and that a new trial is not warranted on the basis of the prosecutor's remarks during closing argument, mid-trial publicity, or the district court's conduct of voir dire.  The judgment of the district court is AFFIRMED.