# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2022

Lyle W. Cayce
Clerk

No. 21-40220

United States of America,

*Plaintiff—Appellee*,

*versus*

Babatope Joseph Aderinoye,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-252

---

Before Richman, *Chief Judge*, and Costa and Ho, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

Babatope Aderinoye and accomplices stole millions of dollars in a transcontinental business email compromise scheme. A jury convicted him of numerous counts of fraud, money laundering, and identify theft for his role in the operation. On appeal, Aderinoye challenges his sentence for the fraud and laundering convictions. He argues that the district court erred by including five enhancements when calculating his Sentencing Guidelines range. Finding no error, we AFFIRM.

No. 21-40220

I

Aderinoye committed the type of fraud HR departments warn their employees about. Posing as companies known to his targets, Aderinoye and his co-conspirators emailed potential victims seemingly legitimate requests to update their payment information. By complying, the targets unwittingly sent payments to fraudulent accounts controlled by the schemers. Aderinoye would then either withdraw the funds or transfer them to other accounts in the United States and Nigeria to evade detection. The far-reaching scheme involved at least forty fraudulent bank accounts opened under more than twenty personal and professional aliases.

All told, Aderinoye attempted to steal $4.8 million and succeeded in causing $1.9 million in loss. Victims of the scheme include a school district, a nonprofit, small businesses, and elders.

A jury convicted Aderinoye of one count of conspiracy to commit bank fraud, four counts of wire fraud, one count of conspiracy to commit wire fraud, one count of mail fraud, one count of conspiracy to commit money laundering, and seven counts of aggravated identity theft.

At sentencing, the district court adopted the Presentence Report's Sentencing Guidelines calculation, which recommended a sentence of 210–262 months for the fraud and money laundering convictions based on an adjusted offense level of 37. That offense level included a two-level increase under U.S.S.G. § 2B1.1(b)(2)(A)(iii) because the offense resulted in a substantial financial hardship to at least one victim; a two-level increase under § 2B1.1(b)(9)(A) because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization; a two-level increase under § 2B1.1(b)(10)(C) because the offense involved sophisticated means; a two-level increase under § 2B1.1(b)(11)(A)(ii) because the offense involved the possession or use of an authentication

feature; and a four-level leadership role adjustment under § 3B1.1.   The district court sentenced Aderinoye within the Guidelines to 240 months on the fraud and laundering counts.[1]

## II

Aderinoye does not allege any defects in his trial.  He challenges only the district court's calculation of his Sentencing Guidelines range.   He contends that his sentence would have been lower if the district court had not applied the five enhancements listed above.

We address each of Aderinoye's objections to his sentence in turn. The standard of review varies depending on whether a claim is preserved. Normally, we review the district court's interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error.  *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009).   But we apply the more deferential plain error review to the claims Aderinoye raises for the first time on appeal.  *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003).   We will reverse under this standard only if the error is clear or obvious, affected the outcome of the case, and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotations omitted).

## A

Several of Aderinoye's challenges are readily resolved.

Aderinoye argues for the first time that the district court should not have added two points to his offense level for a crime that "involved

---

[1] The district court also sentenced Aderinoye to consecutive, 24 month sentences on each of the aggravated identity theft convictions.  Aderinoye does not contest those sentences.

sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). The sophisticated means enhancement applies to "complex" or "intricate" efforts to commit or conceal a crime. *Id.* cmt. 9(B). "[H]iding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts . . . ordinarily indicates sophisticated means." *Id.* Aderinoye's conduct falls squarely within this definition. He created at least forty fraudulent bank accounts in the names of real and fictious persons and business entities to receive funds from his victims. He then transferred the funds between those accounts and eventually to accounts in his true name and to Debatop Properties, a shell corporation he maintained in Nigeria. Together these actions constitute sophisticated means that "made it more difficult for the offense to be detected." *United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013); *see United States v. Conner*, 537 F.3d 480, 492 (5th Cir. 2008) (using a fictitious name and business to conduct fraudulent transactions in multiple states involved sophisticated means); *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996) (depositing checks into wife's bank account to "obscure the link between the money and . . . [the defendant]" involved sophisticated means). The district court did not err, let alone plainly err, in applying the sophisticated means enhancement.

Next, Aderinoye faults the district court for applying a two-level enhancement for an offense involving "the possession or use of any . . . authentication feature." U.S.S.G. § 2B1.1(b)(11)(A)(ii). Aderinoye did not raise this issue below, so again we review for plain error. *See Medina-Anicacio*, 325 F.3d at 643. Aderinoye wisely accepts that the false passports and driver's license he used to register corporate aliases and open fraudulent bank accounts contain an "authentication feature" within the meaning of the Guideline. *See United States v. Azubuike*, 743 F. App'x 958, 960 (11th Cir. 2018) (per curiam) (concluding that false passport card contained authentication features); *United States v. Rogers*, 769 F.3d 372, 383 (6th Cir.

2014) (same for driver's license); *see also United States v. Biyiklioglu*, 716 F. App'x 270, 273 (5th Cir. 2017) (accepting that altered passport and driver's license contained "authentication features" for purposes of a different enhancement).    He argues instead that the enhancement is inapplicable because the authentication features must relate to an actual person.  The only support Aderinoye offers for this proposition is an out-of-circuit case relating to a different, now-defunct enhancement. *See United States v. Melendrez*, 389 F.3d 829, 830 (9th Cir. 2004).  His argument may fail on plain error review for this lack of authority alone. *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015) ("[A] lack of binding authority is often dispositive in the plain-error context . . . .").  In any event, Aderinoye did use the information of a real person—a California dentist—on a false British passport and a false Texas driver's license in furtherance of his scheme.  Consequently, this enhancement applies even under Aderinoye's view.

We next address Aderinoye's claim that the district court misapplied the four-level aggravating role enhancement because he was not "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  Although this claim is preserved, it fails under the deference owed the district court on this determination. *See United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014) (noting we must uphold the district court's factual findings if they are "plausible in light of the record read as a whole").

The record supports the district court's conclusion that Aderoniye's fraud was extensive.  The scheme involved multiple participants, both witting and unwitting, across two continents and several states. *See* U.S.S.G. § 3B1.1 cmt. 3 (noting that a fraud that "used the unknowing services of many outsiders could be considered extensive").  It was accomplished through a complex web of falsified identification documents, fraudulent bank accounts, shell corporations, and a sophisticated business email compromise scheme.

No. 21-40220

And it was conducted on a massive scale: Aderinoye and company stole millions of dollars from numerous victims. As the district court aptly noted, "if this isn't extensive, what would be?"

Aderinoye played a key role in this scheme. To determine whether a defendant led or organized criminal activity, courts may consider, among other factors, whether the defendant exercised decision making authority, the nature of the defendant's participation in the offense, whether the defendant recruited accomplices, the defendant's share of the fruits of the crime, and the degree of the defendant's control over others. *Id.* cmt. 4; *see also United States v. Warren*, 986 F.3d 557, 568 (5th Cir. 2021) (explaining that these factors are neither exhaustive nor dispositive). Our precedent does not limit the enhancement to defendants who controlled other participants in the scheme; it is enough that the defendant managed the criminal enterprise's property, assets, or activities. *United States v. Ochoa-Gomez*, 777 F.3d 278, 283 (5th Cir. 2015); *see also Warren*, 986 F.3d at 569 (applying this rule but noting its inconsistency with Application Note 2). Aderinoye exercised extensive authority and control over the scheme's network of fraudulent bank accounts. And he was paid like a leader for his efforts—he admitted to investigators that he kept 40% of the proceeds for himself. The district court's conclusion that Aderinoye organized or led extensive criminal activity was not clearly erroneous.[2]

The district court did not err by enhancing Aderinoye's sentence for use of sophisticated means, use of an authentication feature, or his leadership role.

---

[2] Because we agree with the district court's finding of "otherwise extensive" criminal activity, we need not address Aderinoye's alternative argument that the enhancement fails because the scheme did not involve five or more participants.

No. 21-40220

B

Aderinoye's remaining challenges warrant more discussion.

1

He offers two reasons why the district court should not have added two points to his offense level for causing "substantial financial hardship" to one of the victims, a Houston-area pipe broker named Prime Pipe LLC. U.S.S.G. § 2B1.1(b)(2)(A)(iii).

First, Aderinoye maintains that the enhancement does not apply because a business cannot be a "victim" under this Guideline. This argument was not raised below. Even if it had been, it would fail. The commentary defines "victim" as "any person who sustained any part of the actual loss" and defines "person" broadly to include "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." *Id.* cmt. 1. As a limited liability corporation, Prime Pipe meets this definition. To our knowledge, no court has limited the enhancement in the way Aderinoye urges. *Compare United States v. Amin*, 839 F. App'x 810, 812 (4th Cir. 2021) (per curiam) (declining to address an argument identical to Aderinoye's), *with United States v. Piper*, No. 20-1867, 2021 WL 5088709, at *3 (6th Cir. Nov. 2, 2021) (assuming that the enhancement applies to both businesses and people).

Alternatively, Aderinoye maintains—this time in a claim he preserved—that the government did not meet its burden of showing by a preponderance of the evidence that Prime Pipe's loss was "substantial." We have never defined substantial hardship but agree with other circuits that a loss qualifies if it significantly impacts the victim's resources. *See United States v. George*, 949 F.3d 1181, 1185 (9th Cir. 2020) ("By including 'substantial' before 'financial hardship,' the provision excludes minor or inconsequential financial harms. That conclusion is supported by the noun

'hardship,' which itself suggests something more than a mere inconvenience."); *United States v. Minhas*, 850 F.3d 873, 878 (7th Cir. 2017) ("[T]he word 'substantial' implies that the loss or hardship must be significant, meaning at least more than minimal or trivial."). Insolvency, bankruptcy, loss of a large portion of a retirement or other investment account, needing to change employment or living arrangements, and difficulty obtaining credit all indicate substantial financial hardship. U.S.S.G. § 2B1.1(b)(2) cmt. 4(F). The district court "may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record." *United States v. Howder*, 748 F. App'x 637, 644 (6th Cir. 2018).

The district court's finding that Prime Pipe suffered a substantial loss was not clearly erroneous. In its victim impact statement, Prime Pipe explained:

> Prime Pipe LLC was spoofed out of $200,000.00, in which $98,000.00 was recovered. We are a small business so that is a lot of money to us. That $102,000.00 loss . . . set us back for over six months. We were not able to pay some of our vendors and it was difficult to make payroll. It also affected how we conducted business, especially electronically. We had to take extra steps to insure [sic] that the emails and electronic communication was safe and secure, which inturn [sic] took more manpower hours and time.

Prime Pipe's loss was not ruinous; the company continued to operate after the fraud. But it was not minor or inconsequential, either. A six-month setback is significant for any business, particularly a small one. *See Minhas*, 850 F.3d at 877 (noting that courts should evaluate hardship relative to the victim's means). And inability to pay vendors constitutes temporary insolvency, a factor the commentary identifies as indicative of substantial financial hardship. *See* U.S.S.G. § 2B1.1(b)(2) cmt. 4(F). Prime Pipe's loss

falls somewhere in the area "between a minimal loss or hardship . . . and a devastating loss . . . in which we rely upon the judgment of the district courts." *Minhas*, 850 F.3d at 878. Because the district court's factual determination has support in the record, we again find no error.

2

Finally, Aderinoye challenges the two-level enhancement for an offense involving a "misrepresentation that the defendant was acting on behalf of a charitable [] organization." *See* U.S.S.G. § 2B1.1(b)(9)(A). The parties dispute whether this issue was adequately raised below. But even assuming that it was, we find no clear error.

Our cases applying this enhancement typically fall into two categories. The first occurs when defendants raise funds for a real or made-up charity but keep the money for themselves. *See* U.S.S.G. § 2B1.1(b)(9)(A) cmt. 8(B) (giving examples of this type of misrepresentation). An example is a case in which defendants created a fake Salvation Army website to solicit Hurricane Katrina donations that were never given to victims. *See United States v. Stephens*, 571 F.3d 401, 403 (5th Cir. 2009). The other covers cases in which employees of a charity misappropriate the organization's funds for their own use. *See, e.g.*, *United States v. Reasor*, 541 F.3d 366, 372 (5th Cir. 2008) (affirming enhancement for church bookkeeper who wrote checks to herself from church's account); *United States v. Wiant*, 314 F.3d 826, 828–29 (6th Cir. 2003) (affirming enhancement for administrative officer of charity who instructed bank to transfer grant funds into his personal account). In short, we allow the enhancement both "if a defendant lied about having any connection to a listed organization" in order to fraudulently raise funds and "if a defendant had authority to act for a charity but diverted some of the funds the nonprofit received for 'personal gain.'" *United States v. Diggles*,

No. 21-40220

928 F.3d 380, 391 (5th Cir. 2019) (quoting U.S.S.G. § 2B1.1(b)(9)(A) cmt. 8(B)), *aff'd on reh'g*, 957 F.3d 551, 554 (5th Cir. 2020) (en banc).

Aderinoye's conduct does not fall neatly into either category. He or a co-conspirator emailed Origin Bank pretending to be Project 4031, a nonprofit that assists terminally ill individuals and their families. The email requested cashiers' checks drawn from Project 4031's account, which Aderinoye then deposited into his fraudulent accounts. This conduct does not fit within the first category because Aderinoye did not exploit a third party's altruistic impulses. And it does not fall within the second because he had no actual authority to manage Project 4031's funds.

Nonetheless, the text of the Guideline and its commentary supports the district court's application of the enhancement. The emails to Origin Bank "misrepresent[ed] that the defendant was acting on behalf of a charitable [] organization." *See* U.S.S.G. § 2B1.1(b)(9)(A). And the commentary confirms that the enhancement applies "regardless of whether the defendant actually was associated with the organization." *Id.* cmt. 8(B). Guideline 2B1.1(b)(9)(A) thus applies when a defendant unaffiliated with a charity steals from the organization by pretending to have authority over its accounts.

This is not to say the enhancement applies every time a charity is a fraud victim. The requirement that the defendant purport to act "on behalf of" a charity provides the limiting principle. *See id.* § 2B1.1(b)(9)(A). The enhancement would seemingly not apply, for instance, if a defendant stole from a charity by hacking into its accounts because that crime would not involve the defendant's actual or perceived authority to act for the charity.

After reviewing Aderinoye's challenges to the numerous enhancements, we find no reversible error.

No. 21-40220

\*\*\*

We AFFIRM.