# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2023

Lyle W. Cayce
Clerk

No. 21-60861

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ANTONY DANIEL ABREU; DARRELL YOUNG,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:20-CR-48

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

PER CURIAM:*

Following a seven-day jury trial, defendants Anthony Daniel Abreu and Darrell Young were found guilty of conspiring to possess with intent to distribute five kilograms or more of cocaine and of attempting to possess with intent to distribute 500 grams or more of cocaine.[1] Defendants bring various challenges to their trial and sentencing, several of which are raised for the

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] *See* 21 U.S.C. §§ 841(b)(1)(A), 846.

No. 21-60861

first time on appeal. We hold that the district court neither abused its discretion nor committed plain error in trying and sentencing Defendants and AFFIRM.

## I.

A longtime paid informant working with the Department of Homeland Security was introduced to Abreu through mutual friends. During a series of recorded calls, the informant arranged a cocaine sale with Abreu and his partner, Darrell Young. After meeting with the informant and examining a sample of cocaine from an undercover agent, Abreu asked to buy 15 kilograms of cocaine. Young managed the transportation, arranging to have cash placed in a car's secret compartment in Philadelphia and then having the car shipped to Gulfport. Abreu and Young traveled to Gulfport and met the informant at a Taco Bell, where they showed him a duffle bag full of cash, and the two were immediately arrested.

Defendants were charged with conspiring to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and with attempting to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. Following a seven-day trial, a jury found Defendants guilty on both counts. Young now appeals two issues: the district court's (1) denial of a for-cause challenge to a potential juror and (2) use of an aggravating role enhancement. Abreu appeals three issues relating to the district court's handling of his: (1) entrapment defense, (2) sentencing, and (3) request to introduce extrinsic evidence during cross-examination of the informant. We address each issue in turn.

## II.

We first address Young's appeal of the district court's denial of his for-cause challenge of Juror Number 28. "The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial

2

as a remedy."[2] A juror is biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."[3] A juror may be actually biased or, in "extreme situations," bias may be implied as a matter of law.[4] "The determination of implied bias is an objective legal judgment made as a matter of law and is not controlled by sincere and credible assurances by the juror that he can be fair."[5] As such, we review the issue of implied bias de novo.[6]

This Court makes implied bias findings with "carefully watched limits," as they are only appropriate in a narrow set of circumstances.[7] As Justice O'Connor described in her *Smith v. Phillips* concurrence, such circumstances may include when a juror is employed by the prosecuting agency, is a close relative of a trial participant or someone involved in the criminal transaction, or witnessed or is somehow involved in the crime.[8] Most cases finding implied bias "have done so because the juror had a close relationship with one

---

[2] *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009) (citing U.S. CONST. amend. VI). The remedy for a valid implied bias claim, as the one alleged here, is a new trial. *Solis v. Cockrell*, 342 F.3d 392, 400 (5th Cir. 2003).

[3] *Hatten*, 570 F.3d at 600 (quoting *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000)).

[4] *Solis*, 342 F.3d at 395 (quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)).

[5] *Brooks v. Dretke*, 418 F.3d 430, 434 (5th Cir. 2005); *see also Smith*, 455 U.S. at 222 n.* (O'Connor, J., concurring) ("In those extraordinary situations involving implied bias, state-court proceedings resulting in a finding of 'no bias' are by definition inadequate to uncover the bias that the law conclusively presumes.").

[6] *See Gonzales v. Thomas*, 99 F.3d 978, 986 (10th Cir. 1996) ("Whether a juror was impliedly biased is a legal question we review de novo."); *Hunley v. Godinez*, 975 F.2d 316, 318–19 (7th Cir. 1992) (considering the issue of implied bias a "question of law").

[7] *Solis*, 342 F.3d at 396, 399 n.42.

[8] *Id.* at 395 (citing *Smith*, 455 U.S. at 222 (O'Connor, J., concurring)).

of the important actors in the case or was otherwise emotionally involved in the case, usually because the juror was the victim of a similar crime."[9] For example, this Court has found implied bias where a juror withheld that his brother was a deputy in a sheriff's department that investigated the case.[10] On the other hand, this Court has declined to find implied bias when a juror was friends with the victim of the alleged crime,[11] when a victim's grandson was married to a juror's daughter,[12] and when a juror for a burglary case had prior, independent knowledge of the defendant burglarizing homes.[13]

During *voir dire*, Juror Number 28 shared that he previously worked with the Government's case agent at the sheriff's department. He explained that the case agent was one of the people who trained him, that they worked for the same department for ten years, and had patrolled together. Further questioning during *voir dire* revealed that the juror had not worked at the sheriff's department since 2008, his only continued contact with the case agent was occasionally running into him while boating, and the juror's last contact with the case agent was six months prior. The judge inquired as to whether the juror could "put that relationship out of [his] mind . . . and not let it affect [his] decision in his case," to which the juror answered "yes." The judge followed up: "You won't tend to favor the government or the

---

[9] *Id.* at 398–99.

[10] *United States v. Scott*, 854 F.2d 697, 699–700 (5th Cir. 1988).

[11] *United States v. Wilson*, 116 F.3d 1066, 1087 (5th Cir. 1997), *vacated on other grounds, United States v. Brown*, 161 F.3d 256 (5th Cir. 1998).

[12] *Andrews v. Collins*, 21 F.2d 612, 619–21 (5th Cir. 1997).

[13] *Solis*, 342 F.3d at 398–400.

No. 21-60861

defendant because of that [relationship], would you?" The juror responded, "No, sir."[14]

We hold that Juror 28's relationship with the case agent is not one of the "extreme situations" justifying a finding of implied bias. Juror 28 did not meet any of the circumstances in Justice O'Connor's *Smith* concurrence as potentially rising to the level of implied bias as a matter of law. He is not an employee of the prosecuting agency, he is not a closely related to any of the trial participants, and he did not witness nor was he otherwise involved in the crime. Additionally, there are no facts in the record indicating that Juror 28 would inherently have a substantial emotional involvement in the case adversely affecting his impartiality. Accordingly, we affirm the district court's denial of the for-cause juror challenge.

## III.

Young next challenges the district court's use of an aggravating role enhancement. "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error."[15] A factual finding is not clearly erroneous if it is "plausible based on the record as a whole."[16] "Our precedent does not limit the enhancement to defendants who controlled other participants in the scheme."[17] Rather, we look at

---

[14] We include these facts regarding the juror's assurances of impartiality for the sake of thoroughness. As noted, such assurances, even if found credible, have little bearing on the implied-bias question, which is an objective—not subjective—inquiry.

[15] *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015).

[16] *Id.* at 282.

[17] *United States v. Aderinoye*, 33 F.4th 751, 756 (5th Cir. 2022); *see Ochoa-Gomez*, 777 F.3d at 283 ("[A] § 3B1.1 adjustment may be based on either control over people or management of assets.").

"whether the record plausibly supports the district court's finding that [a d]efendant exercised an aggravating role in his offense either by exercising control over another participant *or* exercising management responsibility over property, assets, or activities."[18] To determine whether a defendant is an organizer, "courts may consider, among other factors, whether the defendant exercised decision making authority, the nature of the defendant's participation in the offense, whether the defendant recruited accomplices, [and] the defendant's share of the fruits of the crime."[19]

In *United States v. Aderinoye*, we upheld an enhancement when a defendant "exercised extensive authority and control over the scheme's network of fraudulent bank accounts" and "was paid like a leader for his efforts—[keeping] 40% of the proceeds for himself."[20] Similarly, in *United States v. Delgado*, this Court sitting en banc held a district court's enhancement was not clearly erroneous when the defendant "control[led] a large quantity of drugs and the truck used to transport them," and "made arrangements for their transportation and delivery," even though the defendant did not exercise control over another participant.[21]

In arguing that his involvement does not meet the level required by § 3B1.1, Young points to the Probation Officer's ("PO") comments in the Pre-Sentence Report ("PSR"), which state that the aggravating role enhancement is "not appropriate." Yet, the PO recognized that Young was an "organizer" to some degree. The comment to § 3B1.1 states that in "relatively small criminal enterprises," like the one at hand, "the distinction

---

[18] *Ochoa-Gomez*, 777 F.3d at 283 (emphasis added).

[19] *Aderinoye*, 33 F.4th at 756.

[20] *Id.*

[21] 672 F.3d 320, 345 (5th Cir. 2012) (en banc).

between organization and leadership . . . is of less significance,"[22] which is reflected in § 3B1.1(c)'s inclusion of "organizer," in addition to "leader, manager, or supervisor."[23] Young's role as an organizer included arranging for transportation, counting cash, and providing items to process the cocaine. On these facts, the district court's finding that Young was an "organizer" is "plausible in light of the record as a whole."[24] We affirm Young's sentence.

## IV.

We next address Abreu's challenges. First, Abreu contends that the district court (A) erred in granting the Government's *in limine* motion preventing the defense from referring to entrapment until the presentation of trial evidence and (B) improperly modified the pattern entrapment instruction.

## A.

District courts have "broad discretion to determine . . . what questions will be asked" to potential jurors.[25] Such decisions are reviewed for abuse of discretion.[26] "[U]nless abuse of discretion and prejudice are shown, this Court will not disturb 'the scope and content of voir dire . . . on appeal.'"[27] An abuse of discretion is present when "there is insufficient questioning to

---

[22] U.S. Sent'g Guidelines Manual § 3B1.1 cmt. background (U.S. Sent'g Comm'n 2004) (hereinafter U.S.S.G.).

[23] *Id.* § 3B1.1(c).

[24] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).

[25] *United States v. Cervantes*, 706 F.3d 603, 613 (5th Cir. 2013) (quoting *United States v. Rasco*, 123 F.3d 222, 231 (5th Cir. 1997)).

[26] *Id.*

[27] *Id.* (quoting *United States v. Okoronkwo*, 46 F.3d 426, 433 (5th Cir. 1995)) (alteration original).

No. 21-60861

produce some basis for defense counsel to exercise a reasonably knowledgeable right of challenge."[28] "[I]t is not an abuse of discretion to refuse to allow inquiries of jurors as to whether they can accept certain propositions of law;"[29] such is the case here. Although not allowed to use the word "entrapment," defense counsel was still able to offer evidence and talk about specific evidence. Because Abreu fails to allege that the scope of permissible *voir dire* questioning was insufficient and that using the specific term "entrapment" would have yielded different results, Abreu cannot establish that the district court abused its discretion.

**B.**

A district court's "instructions will be affirmed on appeal if the charge in its entirety presents the jury with a reasonably accurate picture of the law."[30] A district court's "decision to give or exclude a jury instruction is reviewed for abuse of discretion."[31] Any erroneous jury instruction is subject to harmless-error review.[32]

At issue here is whether the district court erred by adding to the Fifth Circuit pattern entrapment jury instruction "additional guidance to the jury from [Fifth Circuit] cases as to the elements of an entrapment defense." The disputed additional language clarified that evidence of later conduct can be used to show that the defendant was predisposed to being approached, noting

---

[28] *Id.* (quoting *United States v. Rodriguez*, 993 F.2d 1170, 1176 (5th Cir. 1993)).

[29] *Id.* (quoting *United States v. Ledee*, 549 F.2d 990, 992 (5th Cir. 1977)).

[30] *United States v. Stanford*, 805 F.3d 557, 569 (5th Cir. 2015) (internal quotation marks and citation omitted).

[31] *United States v. Arthur*, 51 F.4th 560, 567 (5th Cir. 2022) (quoting *United States v. Ragsdale*, 426 F.3d 765, 779 (5th Cir. 2005)).

[32] *Id.*

that "[e]vidence to show predisposition may include active, enthusiastic participation or demonstrated expertise in the criminal endeavor" and that "[a] defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition." The language to which Abreu objects directly quotes this Court's precedent on the issue of entrapment.[33] We hold that the district court did not abuse its discretion by including it.

## V.

We next address Abreu's two challenges to his sentence: (A) whether the government erroneously manipulated the drug quantity calculation by using a criminal informant to suggest the drug amount involved in the conspiracy; and (B) whether the district court erred by imposing a $10,000 dollar fine.

## A.

Abreu challenges the district court's drug quantity determination on the basis of sentencing-factor manipulation,[34] a claim that this Court has not explicitly recognized as a cognizable defense.[35] His appeal rests on different

---

[33] *See United States v. Nelson*, 732 F.3d 504, 514 (5th Cir. 2013) ("[I]f the evidence suggests that the defendant was an unwary criminal who readily availed himself of the opportunity to perpetrate the crime, then predisposition is present."); *United States v. Theagene*, 565 F.3d 911, 919 (5th Cir. 2009) ("Evidence of predisposition can include, for example, active, enthusiastic participation or demonstrated expertise in the criminal endeavor."); *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001) ("[A] defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition.").

[34] Abreu argues that law enforcement inflated the amount of cocaine Defendants negotiated to buy from the government agent (17 kilograms), amounting to sentencing-factor manipulation.

[35] *See United States v. Montgomery*, 746 F. App'x 381, 388 (5th Cir. 2018) (unpublished per curiam) ("Our court has not determined whether the concept of

No. 21-60861

grounds than his objection at sentencing,[36] Abreu did not preserve the claim, and we review it for plain error.[37] Abreu cannot show a clear and obvious error.[38]

## B.

Abreu, for the first time on appeal, challenges the district court's imposition of a $10,000 fine, contesting the determination that he is able to pay that amount. Abreu argues that the district court erred by "fail[ing] to make specific findings that [he] could afford to pay the fine." While a district court must make findings regarding a defendant's ability to pay a fine if it disregards the PSR's recommendation on fines,[39] a district court need not do

---

sentencing entrapment or factor manipulation is a cognizable claim but has addressed a similar contention in the context of a due-process claim."); *United States v. Sain*, 858 F. App'x 730, 731–32 (5th Cir. 2021) (unpublished per curiam) ("[T]his court has not explicitly recognized sentencing entrapment or sentencing factor manipulation as a cognizable defense . . . ."), *cert. denied*, 142 S. Ct. 376 (2021).

[36] At sentencing, Abreu objected to the drug quantity on the basis that he shouldn't be "held responsible for nonexisting drugs," and thus should only be responsible for two kilos of cocaine the undercover agent brought to show Abreu, not the negotiated amount of 17 kilograms. But as the Sentencing Guidelines explain, "in a reverse sting, the agreed-upon quantity of the controlled substance . . . more accurately reflect[s] the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant." U.S.S.G. § 2D1.1, cmt. n.5.

[37] *United States v. Escobar*, 872 F.3d 316, 319 (5th Cir. 2017).

[38] *See Sain*, 858 F. App'x at 732 ("Because this court has not explicitly recognized sentencing entrapment or sentencing factor manipulation as a cognizable defense, [the defendant] cannot show a clear or obvious error. This issue lacks merit." (citations omitted)).

[39] *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir.1999) (citing *United States v. Fair*, 979 F.2d 1037, 1041 (5th Cir. 1992)).

10

No. 21-60861

so where it neither rejects nor departs from the adopted PSR's recommendation,[40] as is the case here.

Here, the district court adopted the PSR, reduced the fine below the Guidelines minimum, and instead imposed what it believed was an "appropriate" and "modest" fine. During Abreu's sentencing, the court confirmed that the Guidelines called for a fine range of $50,000 to $10 million for Count 1 and $50,000 to $5 million for Count 2.[41] Abreu's PSR stated that while Abreu did not appear to be able to immediately pay a fine "within the guidelines range," he "may be able to pay a modest fine in monthly increments during any term of incarceration or supervised release imposed by the Court." The district court accepted this recommendation and reduced the fine amount by 80 percent.[42] In imposing a $10,000 fine, the district court explained that "[t]he fine is a downward departure from the applicable guideline fine range and is based on the defendant's ability to pay." The sentencing judge determined that the $10,000 fine was "appropriate," noting that "Abreu is able-bodied and capable of working" and that the fine was "sufficient but not greater than necessary to accomplish the goals of sentencing." After the district court announced the fine, neither Abreu nor his counsel voiced any objection. In adopting and following the PSR recommendations, the district court did not err.

## VI.

Lastly, Abreu maintains that the district court erred by refusing to allow him to call the informant's wife as a witness for purposes of testifying

---

[40] *United States v. Nava-Palacios*, 476 F. App'x 24, 26 (5th Cir. 2012) (unpublished per curiam).

[41] *See* 21 U.S.C. §§ 841(b)(1)(A)–(B); U.S.S.G. §§ 5E1.2(c)(3)–(c)(4).

[42] The $50,000 minimum fine per count was reduced to $10,000.

about whether her husband reported a prior $50,000 informant payment on his tax returns.[43] The scope of cross-examination is within the discretion of the trial judge but "only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment."[44] While the Confrontation Clause guarantees defendants an *opportunity* for effective cross-examination, it does not guarantee defendants cross-examination to whatever extent they wish.[45] "Whether the exclusion of evidence is of a constitutional dimension depends on the [district] court's reason for the exclusion and the effect of the exclusion."[46] "This determination typically includes an inquiry into the admissibility of the evidence under the Federal Rules of Evidence."[47]

Rule 608(b) forbids Abreu from questioning the informant's wife about the $50,000 payment for the purpose of challenging the informant's character for untruthfulness.[48] Rule 608(b) limits such inquires to the cross-examination of the informant.[49] Accordingly, the questioning would be permissible only if it contradicted the informant's testimony on a material

---

[43] The informant's wife was not listed on the witness list, and the district court also ruled that the informant's wife should have been listed as a witness.

[44] *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (quoting *United States v. Elliott*, 571 F.2d 880, 908 (5th Cir. 1978)).

[45] *Bigby v. Dretke*, 402 F.3d 551, 573 (5th Cir. 2005).

[46] *Skelton*, 514 F.3d at 440 (quoting *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005)).

[47] *Id.*

[48] *See* FED. R. EVID. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.").

[49] *Id.* (noting that courts may allow inquiries as to specific instances of conduct on cross-examination).

No. 21-60861

issue or contradicted the informant's testimony on a collateral issue raised on direct examination.[50] Here, Abreu cannot show that the excluded testimony contradicted the informant's testimony that his wife filed his taxes and that he didn't know whether he reported the $50,000. Nor was the $50,000 material, as it was a payment unrelated to this case. As such, the Federal Rules of Evidence bar Abreu from using extrinsic evidence (the wife's testimony) to inquire about a collateral issue (the informant's tax returns). Additionally, Abreu was able to cross-examine the informant, which was not only beneficial but necessary to his potential entrapment defense. The district court did not plainly err in refusing to allow Abreu to call the informant's wife as a witness for purposes of testifying about her husband's tax returns.

## VII.

The district court's judgment is AFFIRMED.

---

[50] *See id.*; *Jones v. S. Pac. R.R.*, 962 F.2d 447, 450 (5th Cir. 1992) ("[I]f the opposing party places a matter at issue on direct examination, fairness mandates that the other party can offer contradictory evidence even if the matter is collateral.").